**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: YELLOW CAB
COOPERATIVE ASSOCIATION,

      Debtor.

-----------------------------------------

YELLOW CAB COOPERATIVE
ASSOCIATION,

      Plaintiff - Appellant,

v.

METRO TAXI, INC., a Colorado
corporation; COLORADO
TRANSPORTATION, INC., a
Colorado corporation dba American
Cab Company,

      Defendants,

and

BRUCE SMITH, in his official
capacity of Executive Director of the
Public Utilities Commission;
LELAND SMITH, in his official
capacity; PHILIP SMITH, in his
official capacity; RONALD JACK, in
his official capacity; GRAY
GRAMLICK, in his official capacity;
GORDON KING, in his official

No. 96-1443

capacity; WEST TWOMEY, in his official capacity; BOB LAWS, in his official capacity; COLORADO PUBLIC UTILITIES COMMISSION, an agency of the State of Colorado; ROBERT J. HIX, in his capacity as commissioner; VINCENT MAJKOWSKI, in his capacity as commissioner; CHRISTINE E.M. ALVAREZ, in her capacity as commissioner,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 96-K-256)**

---

E. Hil Margolin, Denver, Colorado, attorney for appellant.

Neil L. Tillquist, Assistant Attorney General (Gale A. Norton, Attorney General, with him on the brief), Denver, Colorado, for appellees.

---

Before ANDERSON, KELLY, and HENRY, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Yellow Cab Cooperative Association, Inc. appeals from a district court decision overturning an injunction entered against the Colorado Public Utilities Commission ("PUC") by the bankruptcy court. The district court held that the

bankruptcy court improperly enjoined the PUC from restricting the scope of a certificate it had issued to Yellow Cab. We affirm the district court's order overturning the injunction issued by the bankruptcy court, and hold that the PUC's action was a valid exercise of its regulatory power and, as such, was exempt under 11 U.S.C. § 362(b)(4) and (5) from the automatic stay provisions of the Bankruptcy Code.

## BACKGROUND

Yellow Cab filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 31, 1993. It thereafter negotiated a sale of its assets to Taxi Associates, Inc., outside the ordinary course of business pursuant to 11 U.S.C. § 363(b), (f), and (m), which the bankruptcy court authorized. Among Yellow Cab's assets was Certificate of Public Convenience and Necessity No. 2378 & I ("CPCN No. 2378 & I"), issued by the PUC, which authorized Yellow Cab to operate up to 600 cabs in the Denver metropolitan area. Over the preceding five years, however, Yellow Cab had in fact operated approximately 300 cabs under CPCN No. 2378 & I.

Because the sale of assets involved the sale of PUC operating certificates, the bankruptcy court directed Yellow Cab and Taxi Associates to apply to the PUC for approval of the transfer of the certificates. Yellow Cab and an assignee

of Taxi Associates filed a joint application before the PUC seeking authorization to transfer Yellow Cab's operating authority, including CPCN No. 2378 & I, to Taxi Associates. Two other cab companies, Metro Cab and American Cab, as well as the PUC Staff, filed written objections to the transfer application, arguing that part of Yellow Cab's authority to operate up to 600 cabs under CPCN No. 2378 & I had become dormant through non-use.

An administrative law judge held hearings on the application, and subsequently issued an advisory opinion recommending that the PUC approve the transfer of the full operating authority – up to 600 cabs – authorized by CPCN No. 2378 & I. The PUC disagreed with the administrative law judge. It issued its decision ("Transfer Decision") on Yellow Cab's transfer petition, overturning the ALJ's recommendation and refusing to allow the transfer of authority under CPCN No. 2378 & I in excess of 300 cabs. The PUC held that the unused authority under the CPCN had become dormant and transfer of the full authority would cause destructive competition which would be against the public interest.

While proceedings were pending before the PUC, Yellow Cab initiated this adversary proceeding in the bankruptcy court against the PUC, Metro Cab, and American Cab, seeking an injunction prohibiting them from opposing the transfer of the full 600 cab authority under CPCN No. 2378 & I. The bankruptcy court ultimately issued an order permanently enjoining the PUC from enforcing the

Transfer Decision on the ground that the Transfer Decision limiting CPCN No. 2378 & I to 300 cabs had the effect of "controlling" property of the estate in violation of 11 U.S.C. § 362(a)(3), one of the Bankruptcy Code's automatic stay provisions.

The PUC filed a notice of appeal from the bankruptcy court's order, as well as a motion for stay pending appeal. The bankruptcy court denied the motion, and ordered the PUC "forthwith to authorize [Yellow Cab] to transfer its total operating authority under the [Certificate] of 600 vehicles to Taxi Associates." Colorado Pub. Utils. Comm'n v. Yellow Cab Coop. Ass'n (In re Yellow Cab), 194 B.R. 504, 506 (D. Colo. 1996). The PUC issued the Certificate, with the caveat that it was "subject [to] future modifications by the United States Federal Courts that may result from any appeal by the Public Utilities Commission of" the bankruptcy court's order. Id. at 507.

The following day, February 9, 1996, Yellow Cab and Taxi Associates closed the sale of assets. One week later, the PUC filed a motion in the district court for a stay pending appeal, which the district court granted. Colorado Pub. Utils. Comm'n v. Yellow Cab Coop. Ass'n (In re Yellow Cab), 192 B.R. 555 (D. Colo. 1996). Yellow Cab then filed a motion to dismiss the PUC's appeal as moot or, alternatively, to vacate the stay. In reliance on the stay, the PUC reissued CPCN No. 2378 & I, with a limit of 300 cabs. The district court denied

-5-

Yellow Cab's motions. In re Yellow Cab, 194 B.R. at 508. In its third order, the one from which Yellow Cab appeals in this case, the district court overturned the bankruptcy court's injunction, holding that two exceptions to the automatic stay provisions, 11 U.S.C. § 362(b)(4) and (5), which exempt from the automatic stay certain governmental action designed to enforce the government's police or regulatory power, applied and permitted the PUC to reduce the authority transferred by the CPCN to 300 cabs. Colorado Pub. Utils. Comm'n v. Yellow Cab Coop. Ass'n (In re Yellow Cab), 200 B.R. 237 (D. Colo. 1996). Yellow Cab appeals. The PUC has filed a motion to dismiss the appeal on the ground that Yellow Cab lacks standing and/or the case has become moot. Yellow Cab argues that we should vacate the district court decision, as the case had become moot prior to the issuance of that decision.

## DISCUSSION

### I. Standing and Mootness

We first address the PUC's argument that Yellow Cab lacks standing and the case has become moot. "Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727

-6-

(10th Cir. 1997) (quoting Arizonans For Official English v. Arizona, 117 S. Ct. 1055, 1069 (1997)). Both standing and mootness are threshold jurisdictional issues. Keyes v. School Dist. No. 1, 119 F.3d 1437, 1445 (10th Cir. 1997); McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996). To have standing, a plaintiff must have suffered an actual injury – "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Keyes, 119 F.3d at 1445 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Moreover, to have standing a plaintiff must show that "'it is likely that the injury will be redressed by a favorable decision.'" Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997) (quoting United States v. Colorado Supreme Ct., 87 F.3d 1161, 1164 (10th Cir. 1996)). Finally, standing must be demonstrated throughout an appeal: "a plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477, 1485 (10th Cir. 1995). Similarly, "'a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)); see also City of Albuquerque v. Browner, 97 F.3d 415, 420

(10th Cir. 1996), <u>cert. denied</u>, 66 U.S.L.W. 3334, 3336 (U.S. Nov. 10, 1997) (No. 96-1587).

In this case, Yellow Cab now arguably lacks any legally cognizable interest in the outcome. Yellow Cab closed on the sale of its assets to Taxi Associates on February 9, 1996. The sale agreement specifically provided that no representations and warranties concerning the transferred assets, including CPCN 2378 & I, survived the closing. No one disputes that Taxi Associates was aware of the controversy concerning the scope of the authority granted by CPCN 2378 & I, but nonetheless purchased Yellow Cab's assets without reserving the right to complain later about the scope of that authority. However, as long as the possibility remained that Taxi Associates could collaterally attack, or attempt to "undo," the sale because the scope of the authority was subsequently reduced to 300 cabs, Yellow Cab remained at risk for some additional liability. Indeed, Taxi Associates' assignee, Denver Taxi, took just such action: it filed an application for an administrative expense priority claim against Yellow Cab's estate in the amount of $437,311 for damages allegedly suffered by Denver Taxi due to the PUC's reduction of the CPCN's operating authority from 600 to 300 cabs.

Subsequently, however, Denver Taxi and Yellow Cab entered into a settlement agreement, which has been submitted for approval to the bankruptcy

court.[1]  Pursuant to the settlement agreement, Yellow Cab has agreed to continue to prosecute this case, and Denver Taxi completely releases Yellow Cab from any liability in connection with the sale of assets and proceedings before the PUC. Thus, Denver Taxi has released any claim it could have against Yellow Cab based on the scope of the authority transferred under CPCN 2378 & I.  If the settlement agreement is approved, Yellow Cab will suffer no "injury," economic or otherwise, no matter what the outcome of this appeal.  In that event, the controversy will indeed be moot, as far as Yellow Cab is concerned.[2]

However, the record reveals that the settlement agreement, as of now, has not been approved by the bankruptcy court, and the parties have not notified us to the contrary.  Even if approved, such approval would presumably be subject to

---

[1]At oral argument of this case, we granted the PUC's motion to supplement the record with a copy of the settlement agreement.

[2]Yellow Cab argues that, because the sale of its assets to Taxi Associates occurred prior to the district court's decision, the case has actually been moot since the date of the closing on the sale, and therefore the district court lacked jurisdiction to overturn the bankruptcy court's injunction.  We disagree.  If the case has become moot, it is because Yellow Cab has, subsequent to the sale, negotiated an agreement pursuant to which it will suffer no injury whether or not the district court's decision is upheld.  The closing of the asset purchase agreement did not by itself destroy Yellow Cab's standing.  The possibility remained that Taxi Associates might seek to hold Yellow Cab liable for the diminished cab authority transferred under CPCN 2378 & I.  And that is precisely what Taxi Associates' assignee did.  It is because Yellow Cab has settled that claim, assuming the settlement agreement stands, and is no longer at risk for any judgment based on such a claim, that Yellow Cab's standing has evaporated, and the case between Yellow Cab and the PUC is moot.

challenge on appeal. We therefore cannot say with certainty that the case is moot.

We accordingly alternatively consider the merits of Yellow Cab's appeal.

## II.  Exemption to Automatic Stay

11 U.S.C. § 362(a) provides in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of –
>
> > (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title;
> > . . . .
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a)(1), (3). The bankruptcy court held that CPCN 2378 & I was

property of the estate, and that the PUC's Transfer Decision, reducing the scope

of its authority from 600 cabs to 300 cabs, had the effect of taking property from

the estate in violation of § 362(a)(3). 11 U.S.C. § 362(b)(4) and (5) provide the

following exceptions to the automatic stay:

> The filing of a petition under section 301, 302, or 303 of this section . . . does not operate as a stay–
> . . . .
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or

-10-

proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power . . . .

11 U.S.C. § 362(b)(4), (5). The bankruptcy court held that the "plain language" of §§ 362(b)(4) and (5) demonstrates that they only apply to actions under § 362(a)(1) and (2), not under § 362(a)(3). However, the court held that:

since virtually all actions to which the automatic stay would apply can be characterized as actions "to obtain possession of property of the estate or of property from the estate, or to exercise control over the property of the estate . . ." pursuant to 11 U.S.C. § 362(a)(3), the exceptions for police and regulatory actions contained in 11 U.S.C. § 362(b)(4) would be rendered meaningless if § 362(a)(3) were allowed to stay all actions by a regulatory agency which could affect the estate.

Yellow Cab Coop. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab), No. 93 23733 DEC, slip op. at 6, Appellant's App. at 47 [hereinafter "Order"]. The court therefore considered the PUC's Transfer Decision "as if [it] fell under § 362(a)(1) or (2)," but concluded that the exceptions contained in § 362(b)(4) and (5) did not apply. Id. Its only stated reasons for concluding that those exceptions did not apply were that § 362(b)(4) must be construed narrowly to permit governmental units to protect the public health and safety, as opposed to protecting a pecuniary interest in the debtor's property, and the PUC's action with respect to CPCN 2378

-11-

& I was "solely directed against the property of [Yellow Cab], which does not protect an important public interest." Id. at 7.

The district court disagreed with the bankruptcy court's narrow interpretation of § 362(b)(4), and held that, under Eddleman v. United States Dep't of Labor, 923 F.2d 782, 785-86 (10th Cir. 1991), the PUC's Transfer Decision was exempt from the automatic stay under § 362(b)(4) as governmental regulatory action designed to serve the public interest, not to advance the government's pecuniary interest in Yellow Cab's property. While not explicitly so stating, the district court implicitly agreed with the bankruptcy court's determination that the Transfer Decision fell under § 362(a)(1) of the automatic stay provision, not § 362(a)(3).

Yellow Cab argues the PUC's Transfer Decision is properly characterized as an action to "control" property of the estate under § 362(a)(3), and the plain language of the exemptions contained in §§ 362(b)(4) and (5) demonstrates that they do not apply to actions taken under § 362(a)(3). The PUC argues that its Transfer Decision is not subject to the automatic stay of § 362(a)(3), but, even if it were, the exceptions contained in § 362(b)(4) and (5) apply.

"Our review of the district court's factual and legal determinations is governed by the same standards the district court used to review the bankruptcy court." Taylor v. Internal Revenue Serv., 69 F.3d 411, 415 (10th Cir. 1995).

Thus, we review de novo the legal decisions of the bankruptcy and district courts. Morrissey v. Internal Revenue Serv. (In re EWC, Inc.), 114 F.3d 1071, 1073 (10th Cir. 1997). We review the bankruptcy court's factual findings for clear error. Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.), 82 F.3d 956, 959 (10th Cir. 1996). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." Id.

This issue involves several subsidiary and interrelated inquiries – which automatic stay provision applies to bar the Transfer Decision and whether the exception for governmental regulatory authority contained in §§ 362(b)(4) or (5) applies to exempt the Decision from the automatic stay. Either § 362(a)(1) or (a)(3) applied to initially stay the Transfer Decision. If it was stayed under (a)(1), § 362(b)(4) lifted the stay, assuming the requirements of (b)(4) were met. If it was stayed under (a)(3), we must consider whether (b)(4) has any relevance to (a)(3) even though not explicitly referenced therein. In either event, we must consider whether the PUC's action was an exercise of governmental regulatory authority under § 362(b)(4)[3], so we turn first to that question.

---

[3]We focus primarily on § 362(b)(4), although we recognize that (b)(5) is arguably applicable as well. Section 362(b)(5) addresses "the enforcement of a judgment . . . obtained in an action or proceeding by a governmental unit," while (b)(4) address the actual "action or proceeding." Thus, our discussion of (b)(4) will suffice to cover the

(continued...)

-13-

## A. § 362(b)(4):

In Eddleman v. United States Dep't of Labor, 923 F.2d 782 (10th Cir.

1991) we discussed the parameters of § 362(b)(4) as follows:

> [C]ourts have developed two tests for determining whether agency
> actions fit within the [§ 362(b)(4)] exception. Under the "pecuniary
> purpose" test, the court asks whether the government's proceeding
> relates primarily to the protection of the government's pecuniary
> interest in the debtor's property and not to matters of public policy.
> If it is evident that a governmental action is primarily for the purpose
> of protecting a pecuniary interest, then the action should not be
> excepted from the stay. In contrast, the "public policy" test
> distinguishes between government proceedings aimed at effectuating
> public policy and those aimed at adjudicating private rights. Under
> this second test, actions taken for the purpose of advancing private
> rights are not excepted from the stay.

Id. at 791 (citations omitted); see also Wyoming Dep't of Transp. v. Straight (In

re Straight), 209 B.R. 540, 544 (D. Wyo. 1997). Under that test, the PUC's

Transfer Decision would be subject to § 362(b)(4) if it effectuated public policy,

as opposed to furthering the PUC's pecuniary interest in Yellow Cab's property.

The bankruptcy court held, with little explanation, that "the reduction in the

number of cabs transferred represents an action solely directed against the

property of [Yellow Cab], which does not protect an important public interest. It

does not address the public welfare as does an action to stop violation of

environmental protection laws; or an action to enforce bail in a criminal

---

[3](...continued)
substantive application of (b)(5) as well.

proceeding." Order at 7, Appellant's App. at 48 (citations omitted). The district court held that that conclusion was reversible error and we agree.

As the district court observed, the PUC reduced the scope of the authority contained in CPCN 2378 & I because of Yellow Cab's non-use of its full operating authority "and [because of] damages to other carriers or to the public interest as a result of [any] reactivation of dormant rights." Transfer Decision at 17-18, Appellee's App. at 17-18. The PUC further stated, "the record is sufficient to show that destructive competition may result by unconditional approval of the transfer," id. at 20, and that "[t]he record also shows that approval of the transfer, with the right to use 600 vehicles, would likely damage other carriers and the public interest." Id. at 20-21. The bankruptcy court clearly erred in holding that the PUC's action was directed solely at Yellow Cab's property and not to effectuate public policy or public interest. Thus, the PUC's Transfer Decision is governmental regulatory action under § 362(b)(4), exempt from the automatic stay of 362(a)(1). Because Yellow Cab argues that the stay provision applicable to the PUC's action was § 362(a)(3), not § 362(a)(1), we must next address whether § 362(a)(3) permits an exception for governmental regulatory authority under § 362(b)(4).

-15-

**B. § 362(a)(3):**

11 U.S.C. § 362(a)(3) stays acts "to obtain possession of property of the estate" or "to exercise control over property of the estate." The control language was added in 1984. As one court has observed, "[p]rior to this amendment, few, if any, cases exist in which administrative action was contested under § 362(a)(3) as compared to § 362(a)(1)." In re National Cattle Congress, Inc., 179 B.R. 588, 595 (N.D. Iowa 1995), remanded on other grounds, 91 F.3d 1113 (8th Cir. 1996). Because many governmental regulatory actions can be characterized as exercising control over a debtor's property, "the addition of the control language has sufficiently changed the focus of § 362(a)(3) to invite litigation in the area of administrative agency action under both sections." Id. Courts have struggled, in particular, to reconcile the fact that governmental police or regulatory power is clearly exempted from the stay imposed by (a)(1), but not clearly exempted from the stay imposed by (a)(3), despite the fact that comparable governmental administrative action might be involved. One way courts have accomplished that reconciliation is by construing the term "control" in (a)(3) with reference to § 362(b)(4).

An often-cited, and thoughtful, analysis of the term "control" in § 362(a)(3) appears in Beker Indus. Corp. v. Florida Land and Water Adjudicatory Comm'n (In re Beker Indus. Corp.), 57 B.R. 611, 626 (Bankr. S.D.N.Y. 1986):

In asserting coverage by § 362(a)(3) on a control theory, Beker contends that by regulating transport from the mine, the County and the Commission are exerting control over it. This argument has appeal only if by employing the term "control," Congress sought to include state and local regulation, as opposed to the limitation on the § 362(b)(4) exemption applicable to the automatic stay of acts against a debtor, such as state attempts to enforce state distribution schemes with respect to property of the estate . . . or governmental acts to establish or protect a pecuniary interest in estate property . . . . To have done so through enacting the phrase and concomitantly failing to have amended § 362(b)(4) to exempt good faith exercise of police and regulatory power from § 362(a)(3) would have legislatively overruled the numerous cases exempting such governmental acts from the automatic stay . . . .

Following Beker, a number of courts narrowly interpret § 362(a)(3), consistent with its legislative history, to apply "to prevent dismemberment of the estate" and to assure its orderly distribution. H.R. Rep. No. 595, 95th Cong., 1st Sess. 340, 341 (1977), reprinted in 1978 U.S.C.C.A.N. at 6298. Beker concluded that "the scope of the control provision of § 362(a)(3), as applicable to governmental regulation, is governed by the contours of § 362(b)(4) as developed by case authority." In re Beker Indus. Corp., 57 B.R. at 626.

We agree with those courts which have held that the governmental regulatory or police power exception of § 362(b)(4) applies to actions stayed under § 362(a)(3). We recognize that there is some disagreement on this point, but conclude that the better reasoned view is that expressed in Beker. See Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 369 (6th Cir. 1997) ("[T]he universe of actions that trigger an automatic stay under § 362(a)(3) does not

-17-

include those governmental actions entitled, under § 362(b)(4), to an exception from an automatic stay."); Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.), 191 B.R. 433, 442 (Bankr. E.D. Cal. 1995) (rejecting the view that § 362(b)(4) applies only to stays under § 362(a)(1)), aff'd in part and appeal dismissed in part, 128 F.3d 1294 (9th Cir. 1997); In re National Cattle Congress, Inc., 179 B.R. at 595 (agreeing with Beker); Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.),107 B.R. 832, 843 (Bankr. S.D.N.Y. 1989) (agreeing with Beker); cf. Slater v. Town of Albion (In re Albion Disposal, Inc.), 203 B.R. 884, 887 (Bankr. W.D.N.Y. 1996) ("[S]ome exercises of control by a governmental entity are so inextricably linked to (or otherwise are indistinguishable from) the type of (a)(1) action that (b)(4) forgives, that (a)(3) should be ignored entirely when the (b)(4) defense is found to exist."), aff'd in part and remanded in part, 1997 WL 461997 (W.D.N.Y. Aug. 11, 1997).  But see Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 591 (9th Cir. 1993) ("There is no governmental powers exception to section 362(a)(3). . . .").[4]

_____

[4]The Supreme Court's decision in Board of Governors v. MCorp Fin., Inc., 502 U.S. 32 (1991) indirectly supports our view.  While in bankruptcy, MCorp sought to enjoin two administrative proceedings brought against it by the Federal Reserve Board.  Among the arguments MCorp made was that § 362(a)(3) stayed the administrative proceedings.  The Supreme Court rejected that argument, not on the ground that (b)(4) did not apply to (a)(3), but on the ground that the automatic stay provisions do not apply to

(continued...)

To sum up, we hold that: the PUC's conduct in reducing the scope of the authority transferred by CPCN 2378 & I was governmental regulatory action under § 362(b)(4); whether § 362(a)(1) or (a)(3) was the stay provision applicable to the PUC's action, in either event, § 362(b)(4) exempted that action from the automatic stay and authorized the Transfer Decision. We therefore AFFIRM the district court's order overturning the injunction issued by the bankruptcy court.

---

[4](...continued)
ongoing, nonfinal administrative proceedings.