In re LODGE AMERICA, INC., Debtor.

Eric C. Rajala, Trustee,
Plaintiff–Appellee,

v.

Rudy Langer, Defendant–Appellant.

Bankruptcy No. 95–21465–7.
Adversary No. 96–6127.
Civ. No. 99–2238–CM.

United States District Court,
D. Kansas.

Feb. 27, 2001.

Eric C. Rajala, Overland Park, KS, for plaintiff.

R. Pete Smith, McDowell, Rice, Smith & Gaar, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This is an appeal from a final Judgment and Order of the bankruptcy court. In the

case being appealed, the plaintiff-appellee, Eric Rajala, Chapter 7 trustee, sued the defendant-appellant, Rudy Langer, to avoid a post-petition loan repayment made by the debtor-in-possession to the appellant before the case was converted to a Chapter 7 proceeding. Such an action is a core proceeding under 28 U.S.C. § 157. The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334 and to this court's order regarding bankruptcy court jurisdiction, effective July 10, 1984. (D. Kan. Rule 83.8.5). Therefore, this court has jurisdiction over the appeal pursuant to 28 U.S.C. §§ 158, 1334.

## I. Standard of Review

■■■ The standard of review used by the district court to review the bankruptcy court is the same as that used by the court of appeals to review the factual and legal determinations of the district court. *Yellow Cab. Coop. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Coop. Ass'n)*, 132 F.3d 591, 596 (10th Cir.1997). Legal decisions of the bankruptcy court are reviewed de novo and factual findings are reviewed for clear error. *Id.* at 596–97; see also, *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *Yellow Cab*, 132 F.3d at 597 (quoting *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir.1996)). The Tenth Circuit has further explained "clearly erroneous":

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.)*, 124 F.3d 1238, 1241 (10th Cir.1997) (brackets in original) (citations omitted).

## II. Facts

The facts before the bankruptcy court were stipulated. (Record on Appeal, Stipulation of Facts, w/ Ex. 1–6). This opinion contains only a brief review of the important facts. A complete statement of facts is contained in the bankruptcy court's opinion. *Rajala v. Langer (In re Lodge Am., Inc.)*, 239 B.R. 580, 581–83 (Bankr. D.Kan.1999).

Lodge America, Inc. (debtor) operated a hotel which began experiencing financial difficulties and filed for Chapter 11 reorganization in July 1995. The hotel continued to experience cash flow problems, and the Board of Public Utilities (BPU) issued an ultimatum that the amount of $16,000 must be paid by October 18, 1995 or utilities would be shut off on October 19. Debtor desired to keep the hotel open through the month of November, believing seasonal convention business would allow it to pay the $16,000 due and provide sufficient cash flow to continue operations until its reorganization plan was finalized and approved.

At a hearing on October 18, 1995 relating to other matters in the bankruptcy case, but at which attorneys for the BPU and three other creditors were present, the debtor-in-possession related the situation to the judge and explained that the debtor might be able to persuade an individual to loan $16,000 for the payment. The court cautioned, "you're supposed to get approval from the Court before you do that." (ROA, Stipulation, Ex. 4, p. 24, ll. 22, 23). In conclusion, the court commented to the president of the debtor-in-possession,

> "if it's a loan to you and then you loan it to the debtor to pay its debts then if you want to be paid back you better have approval of the deal. Of course, it takes time to give notice to everybody to get

these approvals, and we may be able to do some kind of an expedited hearing . . .

So the Court will accommodate you in every way it can to expedite those things but let me give some more thought to that."

(ROA, Stipulation, Ex. 4, p. 25, l. 21 to p. 26, l. 10).

The BPU extended its deadline for payment until October 25, 1995. After the October 18 meeting, the president of the debtor was told by debtor's attorney that the paperwork was in process and that it was okay to borrow the money. On October 25, the debtor's president explained to the appellant, Mr. Langer, that the debtor's attorney said the transaction was approved and that the paperwork was being prepared. The debtor-in-possession issued a promissory note for $16,000 payable to appellant and, relying on the debtor's president's representations, appellant paid $16,000 to the BPU on the account of the debtor-in-possession.

On November 8, 1995, the debtor-in-possession repaid appellant pursuant to the promissory note, and the business was able to pay additional post-petition utility bills and keep the hotel operating. Approximately a year later, on November 28, 1996, the court ordered the case converted to Chapter 7 and the appellee, Eric C. Rajala (trustee), became the Chapter 7 trustee. Thereafter, the trustee filed an action in the bankruptcy court seeking to avoid the November 8, 1995 payment to the appellant. The trustee alleged the transfer was not authorized by the court or under Title 11. The bankruptcy court agreed with the trustee, ordered the appellant to repay the $16,000 to the bankruptcy estate, and found that the appellant would be allowed an unsecured nonpriority claim in that amount against the estate. *Rajala*, 239 B.R. at 585.

### III. Analysis

The appellant argues that the bankruptcy court's decision is against controlling legal precedent. He argues that the transaction should be granted at least an administrative priority under the Bankruptcy Code, 11 U.S.C. § 503(b)(1), as an ordinary course of business unsecured debt or in equity as unsecured debt approved by the court in an order nunc pro tunc.

### A. Pertinent Statutes

A debtor-in-possession may operate the debtor's business in a reorganization under Chapter 11. 11 U.S.C. §§ 1107, 1108. The Bankruptcy Code, however, allows the trustee to avoid any "transfer of property of the estate—(1) that occurs after the commencement of the case; and (2) . . . (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(1) & (2)(B). The $16,000 paid by the debtor to appellant on November 8, 1995 was a transfer of estate property-money-that occurred after the case began. Therefore, the question which the bankruptcy court was required to answer, and which this court reviews, was whether the transfer was authorized under Title 11 or by the court. If not, the transfer is avoidable pursuant to § 549, and the appellant must return the money to the estate.

Section 364(a) of the Bankruptcy Code allows a debtor-in-possession operating the business of the debtor under § 1108 to incur unsecured debt in the ordinary course of business and provides that debt so incurred shall be given priority as an administrative expense under § 503(b)(1). Furthermore, under § 363, a debtor-in-possession who is operating the business of the debtor under § 1108 "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, . . . and may use property of the estate in the ordinary course of business." 11 U.S.C. § 363(c)(1).

### B. Appellant's Arguments

The appellant admits that the transfer in question was not authorized in advance by

the bankruptcy court. However, appellant argues that the transfer was either authorized under Title 11 as an expense in the ordinary course of business or should have been authorized by the bankruptcy court in equity by an order nunc pro tunc.

### C. Ordinary Course of Business

Appellant's ordinary-course-of-business argument appears to be two-fold. Appellant primarily claims pursuant to § 364(a) that the debt is authorized as an unsecured debt incurred in the ordinary course of the debtor's business. Appellant's alternative argument, pursuant to § 363(c)(1), is unclear. The appellant seems to claim that the payment to appellant is a transaction entered in the ordinary course of the debtor's business. Appellant reasons that payment of the BPU bill by the debtor-in-possession would have been authorized by the statute, that appellant's payment of the bill followed a few weeks later by payment from the debtor-in-possession to the appellant is the same as payment by the debtor-in-possession directly to the BPU, and, therefore, the payment to the appellant is a post-petition transaction in the ordinary course of the debtor's business authorized by § 363(c)(1).

#### 1. Section 364(a), Unsecured Debt Incurred in the Ordinary Course of Business

■ The Bankruptcy Code does not define "ordinary course of business." Therefore, courts have adopted a two-prong test to assist in determining ordinary course of business. See e.g. *In re Roth Am., Inc.*, 975 F.2d 949 (3d Cir.1992) (applying tests under § 363); *Fidelity Sav. & Inv. Co. v. New Hope Baptist*, 880 F.2d 1172 (10th Cir.1989) (applying tests under § 547); *In re Poff Constr., Inc.*, 141 B.R. 104 (W.D.Va.1991) (§ 364); *In re Ill.-Cal. Express, Inc.*, 72 B.R. 987 (D.Colo. 1987) (§ 363); *In re Magic Circle Energy Corp.*, 64 B.R. 269 (Bankr.W.D.Okla.1986) (§ 364); *In re Cascade Oil Co.*, 51 B.R. 877 (Bankr.D.Kan.1985) (§ 364, incorporating tests used under §§ 363 and 547).

The tests are: 1) the horizontal dimension test and 2) the vertical dimension or creditor's expectation test. The horizontal dimension test involves an industry-wide perspective in which the debtor's business in compared to other like businesses. The test is whether the post-petition transaction is of a type that other similar businesses would engage in as ordinary business. A transaction occurs in the debtor-in-possession's ordinary course of business when there is a showing that the transaction is the sort occurring in the day-to-day operation of the debtor's business. This showing is required merely to assure that neither the debtor nor the creditor did anything abnormal to gain an advantage over other creditors.

*In re Springfield Contracting Corp.*, 154 B.R. 214, 226 (Bankr.E.D.Va.1993) (applying tests under § 363) (citations omitted).

■ The bankruptcy court applied the two tests to the facts of this case and found that the appellant failed to provide evidence concerning the borrowing practices of the hotel industry or the borrowing practices of the debtor-Lodge America. *Rajala*, 239 B.R. at 583–84. The court concluded that the appellant "failed to show, ... under § 364(a), that Lodge America borrowed from him in the ordinary course of its business." *Id.* at 585.

On appeal, the appellant makes the same arguments he made below, and adds:

> contrary to the Bankruptcy Court's conclusion, there was indeed proof in the record not only of the ordinary course financing needs of hotels generally, but there was direct proof of the ordinary course search for temporary cash to weather the storm by this very hotel debtor. The entire tenor of the transcript of the October 18, 1995 hearing where the need for the $16,000 B.P.U. payment was discussed shows that the ordinary course of business for this debtor was handling temporary funding problems like this one . . . .

It is abundantly clear that the ordinary course of the debtor in October was to solve the various cash flow needs of the hotel in order to keep operating at least through the . . . convention.

(Br. of Appellant, 9–10).

This court finds, as did the court below, that the appellant has provided argument, not proof, with regard to the ordinary course of business of the debtor. Neither the Stipulation of Facts upon which the bankruptcy court based its decision, nor the transcript of the October 18, 1995 hearing, addresses the practices of the hotel industry with regard to short-term financing for any purpose.

Furthermore, the "facts" presented at the hearing, that the debtor was seeking short-term financing to cover various accumulating expenses, are not evidence that the debtor in its day-to-day operations engaged in short-term financing to meet its utility payments. Were the court to find that such activity constituted the ordinary course of business, every short-term financing arrangement made by a debtor-in-possession to cover recurring expenses would be in "the ordinary course of business."

Appellant presents no evidence that the debtor ever made a short-term financing arrangement apart from this instance. He presents no evidence that a creditor would expect the debtor to make such a short-term financing arrangement. He presents no evidence that such short-term financing arrangements are used in the hotel industry. Lacking such evidence, the transaction does not pass either the horizontal dimension or the vertical dimension, creditor's expectation, test. Therefore, the court cannot find that the transaction is in the ordinary course of business. Because the bankruptcy court, pursuant to both the horizontal dimension test and the vertical dimension test, found that the appellant failed to show that the transaction was in the ordinary course of business, this court need not consider whether the horizontal dimension test applies to an analysis under § 364(a).

## 2. § 363(c)(1), Transactions in the Ordinary Course of Business

■ The appellant argues that the transaction at issue is the same as if the debtor paid the BPU for its utility bill. The transaction is, in the appellant's view, in the ordinary course of business and authorized under § 363(c)(1). In a footnote to his brief, the appellant argues that the loan proceeds never belonged to the debtor because the appellant made his payment directly to the BPU for the benefit of the debtor and did not make a general loan to the debtor. (Br. of Appellant, at 14, n. 3). In appellant's view, "[t]he B.P.U. regularly extended credit to the debtor for utilities. It was repaid, extended more credit, and was repaid. [The appellant] was simply a conduit in that process and not a new credit provider." (Reply Br. of Appellant, at 3–4).

The bankruptcy court, on the other hand, found that the appellant lent the money to the debtor in return for a promissory note. The court found that the appellant retained the loan proceeds briefly before paying them to the BPU to apply to the debtor's utility debt. The court concluded that the proceeds of the loan belonged to the estate and were used to pay an ordinary-course expense. Therefore, the court held that the payment to the BPU was "protected under § 363([c])(1) as an ordinary-course-of-business use of estate property that did not require court approval or notice to creditors."[1] *Rajala*, 239 B.R., at 584. The bankruptcy court viewed the payment of the $16,000 to the appellant, however, as a transfer of estate property, money, to repay a loan not authorized by the Code or the court. *Id.*

---

1. The bankruptcy court cited § 363(b)(1). However, § 363(c)(1) is the correct citation. The former citation refers to non-ordinary course of business transactions while the latter refers to ordinary course of business transactions.

This court agrees with the bankruptcy court. Appellant cannot seriously argue that there was no loan or that the proceeds of the loan were not the property of the estate. The stipulated facts establish that the debtor's president asked the appellant to advance the money to cover the utility bills, that the appellant "advanced $16,000 directly to the BPU and the utilities remained on," and that "[t]he Debtor issued its promissory note to [the appellant] for the $16,000 utility advance." (Record on Appeal, Stip. of Facts, at 4–5). The bankruptcy court's findings of fact, that the $16,000 paid to the BPU by the appellant was property of the estate, or that the money paid by the debtor to the appellant was in repayment of a loan, are permissible views of the evidence with factual support in the record and are, therefore, not clearly erroneous.

■ Were the court to accept the view-which it does not-that appellant was merely a "conduit" in the transaction between the debtor and the BPU, it would be unable to approve the transaction under § 363(c)(1) for two reasons. First, the appellant has not shown that the transaction was in the ordinary course of the business of the debtor. For the reasons stated in the court's analysis pursuant to § 364(a), the appellant has not shown that the use of such a "conduit" is a practice of the hotel industry or a practice used in the day-to-day operations of the debtor. Second, the court may not reverse a finding of fact which is plausible in light of the record viewed in its entirety.

### D. Equitable Approval of the Loan with an Administrative Expense Priority

The appellant claims that the court has equitable powers to approve the loan for an administrative expense priority by an order nunc pro tunc. (Br. of Appellant, at 14) (citing *In re Am. Cooler Co.*, 125 F.2d 496, 497 (2d Cir.1942); *In re Cascade Oil Co.*, 51 B.R. 877, 882 (Bankr.D.Kan.1985)). Appellant's view is that the court has such

power if (1) the court is confident it would have granted a timely motion for administrative expense priority, (2) the court is reasonably persuaded that the extension of business made possible by the loan did not harm the creditors, and (3) the debtor and lender acted in good faith. *Am. Cooler*, 125 F.2d at 497.

The bankruptcy court found that the good faith of the appellant would entitle him to equitable relief if such relief were available. However, the court found questionable the persuasive authority of the cases cited by appellant because Congress has substantially changed the nature and scope of the bankruptcy court's equitable powers. *Rajala*, 239 B.R. at 584–85. The court refused to grant equitable relief. The court reasoned that § 364 permits an administrative expense priority for ordinary course of business loans or loans approved in advance by the court and that the court may not use its equitable powers contrary to the statutory mandates of the Bankruptcy Code.

### 1. The Court's Equitable Powers

■ "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a) (emphasis added). The United States Supreme Court has noted that the court's equitable powers in bankruptcy "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Based upon Norwest Bank and the language of the Code, the Tenth Circuit has recognized that the court's equitable powers under § 105 "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code." *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir.1993) (quoting *Landsing Diversified Prop.-II v. First Nat'l Bank and Trust Co. (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir.1990),

modified on other grounds, *Abel v. West*, 932 F.2d 898 (10th Cir.1991)).

## 2. Analysis

 Section 364(a) of the Bankruptcy Code allows the debtor to "obtain unsecured credit ... in the ordinary course of business" as an administrative expense. 11 U.S.C. § 364(a). Section 364(b) allows the court, after notice and a hearing, to authorize the debtor "to obtain unsecured credit ... other than under subsection (a)" as an administrative expense after notice and a hearing. 11 U.S.C. § 364(b) (emphasis added). The language of § 364 covers every situation-in ordinary course of business and not in ordinary course of business, with a hearing and without a hearing. Therefore, the court finds that to issue an order nunc pro tunc retroactively authorizing the debtor to obtain unsecured credit, not in the ordinary course of business, and without notice and a hearing would be inconsistent with the specific provisions of § 364 of the Code.

The appellant claims that, in equity, the October 18, 1995 hearing will suffice under § 364(b) because the loan scenario was described without objection and the court asserted its willingness to accommodate the debtor. Appellant's argument fails because the hearing at issue did not meet the requirements of § 364(b). Appellant does not assert that all creditors were present at the hearing or that all of the creditors had notice that the loan scenario would be discussed at the meeting. The appellant does not assert that the creditors present at the meeting had interests sufficiently similar to the interests of those absent to protect the interests of the absent creditors. Furthermore, at the hearing, the bankruptcy court specifically informed the debtor of the need to secure court approval before it obtained credit, told the debtor that notice must be given to everybody, and told the debtor that the judge would need to give the issue more thought. Under the circumstances, the hearing cannot be viewed as a hearing pursuant to § 364(b). The fact that the appellant was informed and believed that the loan had been approved by the court establishes the good faith of the appellant but does not suffice to authorize an equitable order inconsistent with the clear requirements of the Bankruptcy Code.

## IV. Conclusion

The bankruptcy court properly found that the transfer of $16,000 from the debtor-in-possession to the appellant was avoidable pursuant to § 549(a). The transfer was not authorized in advance by an order of the court. The transfer may not be authorized as an administrative expense for unsecured credit obtained in the ordinary course of business pursuant to § 364(a). The transfer may not be authorized as a transaction by the debtor-in-possession in the ordinary course of business pursuant to § 363. Finally, the transfer may not be authorized by an order nunc pro tunc pursuant to the court's equitable powers under § 105(a).

THEREFORE, the decision of the bankruptcy court is: AFFIRMED