Dale L. Somers, United States Chief Bankruptcy Judge
Debtor Energy Guard Midwest LLC is in a precarious position. Prior to Debtor filing its Chapter 11 bankruptcy petition, the State of Kansas filed a state court petition against Debtor under the Kansas Roofing Registration Act and the Kansas *589 Consumer Protection Act, alleging various untoward practices by Debtor. The State of Kansas seeks the permanent injunction of all Debtor's roofing and construction related work in Kansas. If the state court action continues, Debtor claims it will not be able to reorganize in bankruptcy court, and Kansas consumers' best chance for having their work completed by Debtor will be lost. Debtor seeks an order from this Court enforcing the Bankruptcy Code's automatic stay, effectively putting an end to the State of Kansas's enforcement action. But the State of Kansas argues it is exempt from the automatic stay under 11 U.S.C. § 362(b)(4),[1] because it is a governmental unit enforcing its police and regulatory power. The State of Kansas opposes Debtor's motion, and the state court has already found that the State of Kansas is exempt from the stay under § 362(b)(4).
Because the Court concurs that the State of Kansas's enforcement action meets both the "pecuniary purpose" test and the "public policy" test for showing an action is exempt from the automatic stay under § 362(b)(4), the Court must deny Debtor's motion to enforce the automatic stay.[2] It will be up to the state court to determine how much-or how little-of Debtor's business operations are enjoined.[3]
I. Findings of Fact
Debtor is engaged in roofing and home improvement services throughout Kansas and neighboring states.[4] On March 16, 2018, the Kansas Attorney General filed a state court petition against Debtor, alleging claims under the Kansas Roofing Registration Act[5] and the Kansas Consumer Protection Act.[6] The purpose of the Kansas Roofing Registration Act, an attachment to the Kansas Consumer Protection Act,[7] is the protection of consumers-there is no private right of action under the Act.[8]
The state court petition's claims are based on Debtor's conduct with a client referred to as "T.D." The allegations are that on September 1, 2017, Debtor contracted to perform roofing and home improvement services for T.D. in exchange for payment of $ 55,830. Despite repeated contacts from T.D., Debtor never actually *590 ordered materials for the project and did not carry out the scope of work. T.D. requested a refund. Despite agreeing to discontinue the contract prior to the state court petition ever being filed, Debtor has provided a refund of only about half the amount owed. The State of Kansas requested the following relief: 1) a permanent injunction prohibiting Debtor from operating as a roofing contractor or providing roofing-related, home improvement, or other construction services; 2) reasonable investigative fees and expenses; 3) restitution of $ 43,371.05; 4) civil penalties of $ 40,000 under the Kansas Roofing Registration Act and $ 10,000 under the Kansas Consumer Protection Act; and 5) costs.
The parties to the state court action agreed to a stipulated temporary restraining order. The stipulated order forbade Debtor from advertising, soliciting, or accepting new business. Debtor was specifically prohibited from acting as a roofing contractor or general contractor in Kansas, except for any jobs that were currently under contract. Debtor agreed to provide the State with a list of all projects then under contract so that the State could monitor the completion of Debtor's existing contracts in Kansas.
Debtor did eventually provide a list of its jobs in Kansas to the State. Monicka Richmeyer, director of the Roofing Registration Unit of the Kansas Consumer Protection Division, contacted all of the individuals on the list provided by Debtor to get an update of the status of each contract.
After the state court petition was filed against Debtor, Ms. Richmeyer's office received 9 additional complaints, prompting an amended petition to be filed on May 10, 2018. The amended petition adds facts related to some of the additional complaints, although the relief sought is similar: 1) a permanent injunction prohibiting Debtor from operating as a roofing contractor or providing roofing-related, home improvement, or other construction services; 2) reasonable investigative fees and expenses; 3) restitution of $ 51,371.05; 4) civil penalties of $ 80,000 under the Kansas Roofing Registration Act and $ 150,000 under the Kansas Consumer Protection Act; 5) costs; and 6) permanent revocation of Debtor's roofing registration certificate. In other words, the State of Kansas seeks, through its state court activity, the permanent cessation of all Debtor's work in Kansas, plus higher amounts in restitution and penalties.
On June 4, 2018, Debtor filed a Chapter 11 bankruptcy petition, and shortly thereafter filed the motion to enforce the automatic stay that is the subject of this Order. Debtor seeks an order from this Court declaring that the Bankruptcy Code's automatic stay prohibits the further prosecution of the state court action. An evidentiary hearing was held on October 3, 2018. Post filing, the state court judge entered an order modifying the prior stipulated temporary restraining order. The state court added both Tim Henry (Debtor's general manager) and Elizabeth Henry to the prior order and concluded that the matter was excepted from the Bankruptcy Code's automatic stay under § 362(b)(4).
On April 11, 2018, when the stipulated order was entered, Debtor had 85 jobs that were under contract. Of those, at hearing on this matter on October 3, 2018, Debtor identified 31 jobs that have been completed, 11 jobs that are requesting refunds from Debtor, 4 jobs that are in progress, and 8 jobs that have materials purchased and ready to ship. There are 31 jobs that have not yet been addressed. Mr. Henry testified that Debtor is paying for the work on these jobs in Kansas with profits from the jobs Debtor had in other *591 states. Mr. Henry is also injecting his personal funds into Debtor, from the sale of personal property and a loan from a pawn shop. The State of Kansas recently sent a list to Debtor of 25 consumer complaints that it had received about Debtor and its business practices. Mr. Henry testified that he was unaware of the specific complaints, but that his intent was to finish all jobs under contract.
Mr. Henry admitted that Debtor was in over its head in Kansas, and could not have completed its backlog of jobs without new jobs injecting funds into the company.[9] Debtor also owes a substantial sum to the Internal Revenue Service for withholding taxes. Mr. Henry testified that Debtor had not had a good program in place to prevent the IRS debt, but that Debtor has since changed programs to prevent future tax errors.
II. Conclusions of Law
A. Status of the Law
Under the Bankruptcy Code, the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of- - (1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the bankruptcy case. The purpose of the Bankruptcy Code's automatic stay is "to protect the debtor and his creditors by allowing the debtor to organize his affairs" and to ensure "that the bankruptcy procedure may operate to provide an orderly resolution of all claims."[10] There is an exception, however, to this automatic stay. Section 362(b)(4) states that the filing of a voluntary petition:
does not operate as a stay-- -- (4) ... of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]
There is no debate that the State of Kansas is a governmental unit. The debate centers on whether the State of Kansas is enforcing a "police and regulatory power."
In Eddleman v. U.S. Dep't of Labor ,[11] the Tenth Circuit noted two tests could be used to determine whether an action enforces a governmental unit's "police and regulatory power." The Eddleman court stated:
Of course, not every agency action against a debtor can be characterized as one that enforces "police or regulatory power." Consequently, courts have developed two tests for determining whether agency actions fit within the exception. Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily *592 to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy. If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay. In contrast, the "public policy" test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. Under this second test, actions taken for the purpose of advancing private rights are not excepted from the stay.[12]
The Circuit Court in Eddleman found that a Department of Labor enforcement proceeding seeking to liquidate back-pay claims was exempt from stay under either test. The Tenth Circuit again applied § 362(b)(4) in Yellow Cab Cooperative Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Cooperative Ass'n) ,[13] and held that the exemption applied to an enforcement action by the Public Utilities Commission to restrict the scope of a certificate it had issued to the debtor. The Supreme Court has also addressed § 362(b)(4) and held that § 362(b)(4) applied to an administrative proceeding of the Federal Reserve to prosecute violations of certain banking regulations against the debtor.[14]
B. Application of § 362(b)(4)
Whether § 362(b)(4) applies to the action by the State of Kansas against Debtor is a legal determination. The Court must determine whether the State is trying to enforce a "police or regulatory power." That question requires application of the two tests from Eddleman : whether the State's petition "relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy" and whether the State's petition is taken for the purpose of "effectuating public policy" versus "advancing private rights."
The State of Kansas is asking for three broad categories of relief in its amended state court petition: 1) declaratory and injunctive relief for violations of the consumer protection provisions of the Roofing Registration Act and Consumer Protection Act, 2) penalties, and 3) restitution. Regarding the first category, the prayer for relief seeks a declaration of violations of the Kansas Roofing Registration Act, revocation of Debtor's roofing registration certificate, and a permanent injunction from Debtor operating as a roofing contractor or from providing roofing-related, home improvement, or other construction service. Regarding the second category, Counts 1, 2, and 3 seek penalties of $ 10,000 per count for "deceptive or unconscionable acts or practices" in violation of the Kansas Roofing Registration Act. Counts 4 and 5 seek penalties of $ 110,000 and $ 40,000, respectively, for "deceptive or unconscionable act or practices" in violation of the Kansas Consumer Protection Act. And the prayer for relief also seeks fees and costs in bring the state court petition. Finally, regarding the third category, the prayer for relief seeks restitution totaling $ 51,371.05 under Kan. Stat. Ann. § 50-632(c)(2) of the Kansas Consumer Protection Act.
First, regarding the declaratory and injunctive relief requested for violations of the Kansas Roofing Registration Act and Kansas Consumer Protection Act, this is the quintessential police and regulator function. Under the two tests enunciated *593 in Eddleman , both the pecuniary purpose test and the public policy test are satisfied. The State of Kansas has no monetary interest in Debtor's roofing business, and is seeking to protect Kansas consumers from the alleged "unconscionable" and "deceptive" acts of Debtor. The State of Kansas is carrying out the statutes' public policy purposes, not adjudicating private rights. Multiple cases have stated that "consumer protection is a valid exercise of police or regulatory power for purposes of § 362(b)(4)."[15]
Debtor argues that the State is simply inserting itself into private breach of contract disputes and seeking declaratory and injunctive relief on behalf of those private consumers impacted by an alleged breach of contract. But there are at least 25 unresolved complaints stated against Debtor. This is not merely an issue of breach of contract. The State of Kansas has passed a statute requiring the attorney general to take action when a roofing contractor engages in behavior falling under its consumer protection statutes. This is a public policy matter, not a private action.
Second, regarding the penalties requested by the State of Kansas stemming from the alleged violations of the consumer protection statutes, these are exempt from stay under § 362(b)(4) just as the declaratory and injunctive relief are exempt. Civil penalties both punish past violations and deter future violations.[16] "Thus, a request for civil penalties as part of an enforcement action for violation of consumer protection statutes primarily protects the public, rather than serving the State's pecuniary interests, and is not subject to the automatic stay."[17]
And finally, restitution. The State of Kansas seeks restitution totaling $ 51,371.05 under § 50-632(c)(2) of the Kansas Consumer Protection Act. Section 50-632(c)(2) permits a state court to grant "such orders or judgments as may be necessary to compensate any consumer for damages sustained." The State seeks restitution for named individuals as follows: $ 43,371.05 to "T.D.," $ 3000 to "J.M.," and $ 5000 to "B.W." Clearly, there is a monetary component at play here. And there is a direct benefit to private individuals as well-the authorizing statute allows "compensation" of consumers. Restitution benefits private individuals, but does it benefit the public interest as well?
The circuit courts addressing the issue are not entirely in alignment. In Chao v. Hospital Staffing Services, Inc. ,[18] the Sixth Circuit concluded that a case under the Fair Labor Standards Act seeking to recover unpaid wages and benefits on behalf of individual employees was not exempt under § 362(b)(4).[19] The Sixth Circuit reasoned that the principal purpose of the enforcement action was to adjudicate private rights by recovering unpaid wages, and not to protect the marketplace from unfair competition.[20] But the Tenth Circuit-in the Eddleman[21] case cited throughout this Order-concluded that enforcement proceedings seeking liquidation of back pay claims for specific individuals did come within § 362(b)(4)'s exemption, because the action was simply "another method of enforcing the policies underlying"
*594 the statute at issue therein and because the actual collection of the back-pay claims would proceed "according to normal bankruptcy procedures."[22]
Debtor relies primarily on the Sixth Circuit's Chao case, and especially on language therein that when a state court action could result in a pecuniary advantage to certain private parties over other creditors of the estate, the state court action substantially adjudicates private rights.[23] But as the Tenth Circuit noted in Eddleman , there is no pecuniary advantage to a party from the state court's restitution claims, because the actual collection of any restitution would proceed pursuant to normal bankruptcy processes. In addition, the restitution sought in the State of Kansas action is secondary to the thrust of the state court petition, which is stopping unlawful practices under the Kansas Roofing Registration Act and Kansas Consumer Protection Act. And finally, even restitution itself can be a public policy initiative, as it can discourage unlawful behavior from other roofing contractors.
Much of Debtor's argument goes to the propriety of the case by the State of Kansas. Debtor argues it will not be able to complete its jobs in Kansas if the State continues to prosecute its state court petition, and that consumers would be hurt more by Debtor being unable to continue in its Chapter 11 case. But this Court's job is not to determine the legitimacy of the proposed exercise of police or regulatory power.[24] The express language of § 362(b)(4) prohibits that endeavor.
The petition at the state court will merely fix the amount of the State's unsecured claim against Debtor. The State of Kansas will not be transformed into a secured party or otherwise gain "a pecuniary advantage over other creditors" of Debtor's bankruptcy estate.[25] In addition, the collection of any monetary judgment ultimately obtained will be a separate issue for this Court. The express language of § 362(b)(4) limits exemption from the automatic stay to "enforcement of a judgment other than a money judgment." "[A]nything beyond the mere entry of a money judgment against a debtor is prohibited by the automatic stay."[26]
III. Conclusion
Because the automatic stay does not apply to the State of Kansas's enforcement action due to the application of § 362(b)(4), the State of Kansas can return to the state *595 court and prosecute its petition. The Court denies the motion to enforce the automatic stay filed by Debtor.[27]
It is so Ordered.

Future references to the Bankruptcy Code in the text will be to the section number only.

Doc. 22.

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). There is no objection to venue or jurisdiction by the parties.

Debtor appears by counsel Mark Lazzo. The State of Kansas appears by counsel Jonathan E. Trotter, Assistant Attorney General. The Unsecured Creditor Committee appears by counsel David Eron.

Kan. Stat. Ann. §§ 50-6,121 through 50-6,138b.

Kan. Stat. Ann. §§ 50-623 through 50-643.

See Kan. Stat. Ann. § 50-6,138 (stating that "[a]ny violation of [the Roofing Registration Act] shall be deemed to be a deceptive or unconscionable act or practice under the provisions of the Kansas consumer protection act" and that the Act "shall be part of and supplemental to the Kansas consumer protection act").

See Kan. Stat. Ann. § 50-6,124 (authorizing the attorney general to administer and implement the Act).

Mr. Henry claims Debtor's financial problems began in September 2016. A large hailstorm damaged a significant number of homes in western Kansas. Mr. Henry hired two individuals-a sales person and an insurance negotiator-and both turned out to be bad hires. The sales person wrote contracts that enhanced his personal commission but that lost money for Debtor, and the insurance negotiator simply dropped the ball on getting his work done.

Pursifull v. Eakin , 814 F.2d 1501, 1504 (10th Cir. 1987).

923 F.2d 782, 791 (10th Cir. 1991), overruled in part on other grounds. Either of the two tests could be utilized, but because the Eddleman court concluded that both tests were satisfied, it applied them both.

Id. (internal citations omitted).

132 F.3d 591 (10th Cir. 1997),

Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc. , 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).

In re JSS of Albuquerque, LLC , No. 11-17-10092 JA, 2017 WL 3575654, at *4 (Bankr. D.N.M. Aug. 10, 2017). (collecting cases).

Id. at *8.

Id.

270 F.3d 374 (6th Cir. 2001)

Id. at 391.

Id. at 392-93.

923 F.2d 782 (10th Cir. 1991).

Id. at 791.

See Chao , 270 F.3d at 389.

See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc. , 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) ("[The debtor's] broad reading of the stay provisions [in § 362(b)(4) ] would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts."); see also In re JSS of Albuquerque, LLC , No. 11-17-10092 JA, 2017 WL 3575654, at *6 (Bankr. D.N.M. Aug. 10, 2017) (stating that the bankruptcy court would look "to the contents of the complaint and the relief requested, not to the merits of the claims, to determine whether the police or regulatory power exemption to the automatic stay applies" and that "[w]hether the State can prevail in the State Court Action is generally irrelevant to the Court's determination of whether the exception to the automatic stay applies").

United States v. Commonwealth Cos., Inc. (In re Commonwealth Cos., Inc.) , 913 F.2d 518, 524 (8th Cir. 1990).

Securities & Exchange Commission v. Brennan , 230 F.3d 65, 71 (2d Cir. 2000) (internal emphasis omitted).

Doc. 22.