### In re BLESSING INDUSTRIES INC., Debtor.

#### No. 00–00140–W.

United States Bankruptcy Court, N.D. Iowa.

April 5, 2001.

Andrew Anderson, Assistant Attorney General, Des Moines, IA, Iowa Department of Revenue, Des Moines, IA, John W. Holmes, Waterloo, IA, Eric W. Lam, Thomas G. McCuskey, Steven J. Pace, Joseph E. Schmall, H. Raymond Terpstra, II, Cedar Rapids, IA, Susan L. Martineau, Denver, CO, Donald F. Neiman, Des Moines, IA, Mark A. Roeder, Manchester, IA, Michael P. Shuster, Hahn Loeser & Parks LLP, Cleveland, OH, A.J. Stoik, Sioux City, IA, Mark A. Thompson, Assistant Attorney General, Des Moines, IA, James D. Updegraff, West Union, IA, for creditors.

Gilda L. Boyer, Cedar Rapids, IA, Habbo G. Fokkena, Clarksville, IA, for trustee.

Joseph A. Peiffer, Cedar Rapids, IA, for debtor.

## ORDER RE APPLICATION FOR PAYMENT OF ADMINISTRATIVE PRIORITY CLAIMS

PAUL J. KILBURG, Chief Judge.

Hearing was held on March 22, 2001, on an Application for Payment of Administrative Priority Claims. The Application was filed by Creditor David F. Bolger Revocable Trust and seeks payment in the amount of $185,347.41. Debtor appeared by Attorney Joseph Peiffer. The Chapter 7 Trustee, Habbo Fokkena, appeared personally at the hearing. Attorney Donald Neiman represented the David F. Bolger Revocable Trust. John Schmillen from the U.S. Trustee's Office was present. Also present was Attorney John Waters representing the Iowa Department of Revenue and Finance and Assistant U.S. Attorney Larry Kudej representing the IRS. Evidence was presented and the Court took the matter under advisement.

### FINDINGS OF FACT

Debtor Blessing Industries, Inc., a metal-fabricating company, filed a voluntary Chapter 11 petition on January 25, 2000. Because of allegations of management irregularities, a motion was filed by Creditor David F. Bolger Revokable Trust (Bolger) for the appointment of a Trustee and of a Receiver on March 17, 2000. By Stipulation on March 22, 2000, the motion was granted and Attorney Habbo Fokkena was appointed Trustee. Under the Trustee's guidance, attempts to sell the business as a going concern were ultimately successful.

On August 16, 2000, the Trustee filed a motion to convert the case from a Chapter 11 to a Chapter 7. The motion was granted.

The facts which lead to the present motion occurred in March of 2000, after the filing of the Chapter 11 petition but before the appointment of a Trustee. David Bolger is an entrepreneur and businessman who has had an interest in the Fayette, Iowa community for a long time. When Blessing Industries began, he made a financial commitment to Debtor. At the time of filing, he retained an 18% interest in the business. Over the course of the company's business of approximately 13 years, some repayment of Bolger's initial investment occurred. However, Bolger was not involved in the operation of the company nor did he make any financial investment in the company besides his start-up contribution.

After the filing of the petition and after allegations of irregularities arose, Mr. Bolger became actively involved in the business, though he had no official title. The company was in dire financial condition. A forcible entry and detainer had been filed against the business premises. Salaries had not been paid for two or three weeks and all the bank accounts were in overdraft status. The company had no access to a capital infusion. The company had some accounts receivable but no other source of funding.

After consultation with Kathleen Schott, a Blessing employee, Bolger set up a bank account with an initial deposit of $100,000.00 on March 16, 2000. The establishment of this bank account was a result of discussions which had been ongoing since March 10, 2000. However, funds were not actually withdrawn from this account for the payment of business expenses until March 20, 2000. Bolger eventually advanced up to $300,000.00, but $195,000.00 was the amount actively used as post-petition funding. It is this sum for which Bolger seeks reimbursement as an administrative priority claim.

It is clear that the capital infusion made by Bolger was of significant importance to the company. The funds were used to pay insurance premiums which were in arrears, taxes, and other expenses which allowed the company's doors to remain open. Because of the infusion of capital, the business did continue to run throughout the beginning months of the Chapter 11 filing.

Eventually, the business was sold as a going concern and continues to operate at this time. Because of this, Bolger argues that its money was beneficial to the company and without it the business would have closed and no repayments would have been made to anyone. As it now appears, because of the sale of the business, the Trustee will eventually recognize a fund of money in the approximate amount of $200,000.00. Even so, the total amount will go toward taxes and none will flow to unsecured creditors.

The main objections against approval of this administrative priority claim are made by the IRS and the IDOR which are the entities which stand to receive funds from the final distribution. An objection was also filed by the U.S. Trustee. It is asserted that at no time did Bolger seek Court approval for payment of these funds and none was in fact granted. Eventually, the Court approved an infusion of another $100,000.00 after notice and a hearing. Despite not seeking Court approval prior to the infusion of the capital, Bolger asks for ex post facto approval as an administrative priority claim.

In doing so, Bolger presents itself as a largely gratuitous entity attempting to help out a small business which was important to the town of Fayette, Iowa. Howev-

er, the full record reflects that the money infusion was not purely gratuitous. The record shows that Bolger had a financial interest in the company and wanted to protect his investment so that he could eventually be reimbursed for his initial start-up investment in the company. Additionally, evidence reflects that at some point during the discussions in March of 2000, Bolger was not merely a magnanimous source of funding. He became actively involved in the management of the company, though he had no inherent right to do so. He also discussed the possibility of buying the company. Therefore, Bolger's motivation was not free of self-interest. In fact, Bolger's involvement in the company increased to the extent that it became a concern to counsel for Debtor. The conduct and actions of Bolger increased to the point that it interfered with attempts by counsel to stabilize the business and possibly hindered the potential sale of the business at an early stage.

Finally, Bolger acknowledged that he is a knowledgeable businessman and with some working knowledge of bankruptcy. Bolger was informed by counsel for Debtor of the need for Court approval of any infusion of capital. Despite Bolger's apparent knowledge of the bankruptcy system and after being advised of the need for Court approval, he went ahead and expended these funds for the benefit of the business without court sanction.

## CONCLUSIONS OF LAW

■ Bolger first proceeds upon the theory that the post-petition loan is an allowable administrative expense under 11 U.S.C. § 503(b)(1) because the unsecured debt was incurred in the ordinary course of Debtor's business. Section 364(a) provides a debtor-in-possession or a trustee with the authority to "obtain unsecured credit and incur unsecured debt in the ordinary course of business" without court approval. 11 U.S.C. § 364(a). The party claiming an administrative expense priority bears the burden of proof. *In re Husting Land & Dev., Inc.*, 255 B.R. 772, 777 (Bankr.D.Utah 2000).

■ Neither the Bankruptcy Code nor the legislative history of § 364(a) shed light upon what constitutes a transaction in the "ordinary course of business". *Id.* at 778. Over the years, two test have emerged, and frequently courts employ both to determine whether the claim can be treated as an administrative expense. *See In re Dartco Inc.*, 197 B.R. 860, 870 (Bankr.D.Minn.1996).

■ The first test is the creditor's expectation test, otherwise know as the "vertical" test. It asks whether a reasonable creditor would view the transaction as deviating from the debtor's normal day-to-day operations. *In re Waterfront*, 56 B.R. 31, 36 (Bankr.D.Minn.1985). Additionally, the court inquires into whether the transaction exposed the creditor to economic risks that it did not agree to when it first extended credit. *Husting Land*, 255 B.R. at 778. If the transaction is something that might be considered "unusual, controversial or questionable" the creditors have a right to be notified so that they have an opportunity to object. *Id.* at 779.

■ The counterpart to the "vertical" test is the "horizontal" test. This test compares "the debtor's business with other like businesses to determine whether the disputed transaction is ordinary for the particular type of business concerned." *Id.* Thus, if the transaction fell within a range of accepted practices within Debtor's particular industry, then it could be categorized as taking place in the "ordinary course of business." *Dartco*, 197 B.R. at 870.

■ In the instant case, Bolger provided Debtor with a $300,000.00 line of credit. Prior to this one-time loan, Bolger was not involved with the business on a day-to-day basis. No security was taken for the loan but, instead, Bolger took the risk that the Court would treat the advance as an administrative expense. Naturally, if the Court were to grant such a request, the priorities of the existing creditors would have to be reordered. Certainly this was, at best, an unorthodox means of doing business for Debtor. This Court concludes that this transaction falls outside the purview of Debtor's "ordinary course of business" and, therefore, fails the "vertical" test.

Bolger argues, in the alternative, that the Court should use its inherent equity power to authorize the loan ex post facto. Since the loan was not in the "ordinary course of business", section 364(b) requires notice to interested parties and prior Court approval. The Eighth Circuit has not addressed the standards for post facto approval of a loan under § 364. However, several other courts have examined the matter and the majority have determined that the Code allows for such an order. *See In re National Reserve Corp.*, 199 B.R. 241, 244 (Bankr.D.Mass.1996); *In re E–Tron Corp.*, 141 B.R. 49, 56 (Bankr.D.N.J.1992); *In re Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 850 (Bankr.W.D.Mich.1992). *But see In re Lodge America Inc.*, 239 B.R. 580, 584 (Bankr.D.Kan.1999) (holding nunc pro tunc order contrary to explicit statutory mandates), *aff'd*, 259 B.R. 728 (D.Kan.2001).

The authority for a nunc pro tunc order is derived from § 105(a), which states that the court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]". 11 U.S.C. § 105(a). However, the Supreme Court has concluded, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).

■ In an analogous context, the Eighth Circuit has found that fundamental fairness requires a court to consider a nunc pro tunc order for professional compensation under § 327(a), despite explicit language in the provision which requires prior court approval. *In re D.C., Inc.*, Bankr. No. 97–01860–W, slip op. at 2 (Bankr.N.D.Iowa Dec. 19, 1997)(citing *Lavender v. Wood Law Firm*, 785 F.2d 247, 248 (8th Cir.1986)). However, extraordinary circumstances must exist if a court is to grant a nunc pro tunc order. *Id.* Given the Eighth Circuit's conclusion in the context of professional compensation, it may well reach a similar result with regard to unsecured credit obtained post-petition without notice or court approval.

The primogenial case for determining whether cause exists for a nunc pro tunc order authorizing post-petition financing is *In re American Cooler Co.*, 125 F.2d 496 (2d Cir.1942). The opinion lists three factors, all of which the party seeking authorization needs to satisfy in order for a court to retroactively validate a transaction. First, the court must be convinced that it would have authorized the request had a timely application been made. *Id.* at 497. Second, the court must be reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan. *Id.* Finally, the court must take into consideration the good faith motivation of the parties who entered into the transaction and whether they honestly believed they had the authority to enter into the transaction with out prior court approval. *Id.*

■ A few courts have criticized the test as being outdated. *In re J.L. Graphics, Inc.,* 62 B.R. 750, 755 (Bankr.D.N.H. 1986) (holding rationale for permitting retroactive validation orders no longer exist); *Lodge America,* 239 B.R. at 584. Although the precedential value of *American Cooler* has been questioned, this Court agrees with the line of cases which hold that a court's power to retroactively validate a transaction has not been completely eviscerated by subsequent bankruptcy legislation. It is simply the case that it is more difficult to obtain such an order now than it was prior to the adoption of the current Bankruptcy Code. *In re City Wide Press, Inc.,* 102 B.R. 431, 436 (Bankr. E.D.Pa.1989) (concluding there must be something more "compelling" in addition to the three factors listed in *American Cooler*). Therefore, a party seeking a nunc pro tunc order in this context must satisfy all three factors set forth in *American Cooler,* as well as demonstrate that extraordinary, if not unusual, circumstances exist which warrant ex post facto approval.

■ Bolger has failed to carry its substantial burden of showing that an equitable remedy is justified in this case. Despite the finding that no creditors were actually harmed by the unauthorized financing, Bolger has failed to demonstrate that extraordinary circumstances existed which prevented it from following the explicit mandates of the Bankruptcy Code.

Bolger claims that the funds were needed immediately and that it did not have time to seek court approval. However, the Court finds that this argument is not persuasive. Ten days passed from the initial discussions of the possible cash infusion until the funds were actually expended. The Bankruptcy Code provides for an expedited hearing in cases of emergency, and often a hearing can be scheduled as early as the next day. *See* Fed. R. Bankr.P. 4001(c).

Serious questions of due process exist in circumstances such as this. "Due process requires that interested parties have meaningful notice with adequate opportunity to object." *In re Commercial Millwright Service Corp.,* Bankr. No. 95–60007KW, slip op. at 2 (Bankr.N.D.Iowa Sept. 15, 1995). When parties attempt to keep a company afloat while disregarding procedural safeguards, the underlying purposes of the Code is frustrated. At minimum, due process requires that other interested parties have notice of the transaction.

At times, the need for immediate action prevents adequate notice from reaching interested parties. In those limited circumstances, retroactive approval may be justified. However, in this case, Bolger has failed to establish that it was justified in acting without court approval. Bolger was informed by counsel that it had to receive court approval before proceeding with the transaction but failed to do so. Bolger took the risk that the capital infusion might or might not save the company from collapse but failed in its duty to inform the remaining interested parties of its course of action. The Court cannot condone such action when following the Code procedures would not have produced a hardship on the parties.

At present, there are no funds projected for distribution to unsecured creditors. Thus, it is not necessary to consider whether Bolger's capital infusion is an unsecured claim or if it is even a claim that is recognizable in bankruptcy.

**WHEREFORE,** Bolger has failed to carry its burden to prove that a nunc pro tunc order is justified in this case.

**FURTHER,** Creditor David F. Bolger Revocable Trust's Application for Payment of Administrative Priority Claim is denied.

**FURTHER,** the Court retains jurisdiction to determine any remaining issues if the estate should accumulate sufficient funds to make a distribution to unsecured creditors.