**In re Bruce Alan NILGES, Deanna Lynn Nilges, Debtors.**

No. 99–00326.

United States Bankruptcy Court, N.D. Iowa.

Sept. 15, 2003.

Thomas L. Fiegen, Cedar Rapids, IA, for Debtors.

Lewis M. Churbuck, New Hampton, IA, Joseph M. Haskovec, Cresco, IA, Wesley B. Huisinga, Cedar Rapids, IA, Christopher F. O'Donohoe, Elwood, O'Donohoe, O'Connor, New Hampton, IA, Roger L. Sutton, Charles City, IA, for creditors.

## ORDER RE FOURTH POST–CONFIRMATION APPLICATION FOR COMPENSATION

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on August 21, 2003 pursuant to assignment. Thomas Fiegen and Susan Daufeldt appeared as attorneys for Debtors. Janet Reasoner appeared on behalf of the U.S. Trustee. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

Fiegen Law Firm seeks additional fees of $7,012.75 and expenses of $701.44, or a total of $7,714.19, for services rendered postconfirmation as attorney for Debtors. The Court set the matter for hearing on its own motion. U.S. Trustee filed a comment questioning the reasonableness of the fees.

### FINDINGS OF FACT

Fiegen Law Firm represents the Chapter 12 Debtors. It seeks compensation pursuant to its Fourth Post–Confirmation Application for Court Approval of Compensation of Attorneys' Fees and Expenses. Through previous applications, the Law Firm has received payment of total compensation from Debtors of $21,043.27 for fees and expenses incurred prior to March 1, 2002. The instant application seeks compensation for fees and expenses incurred from March 1, 2002 through May 31, 2003.

During this time, Debtors changed their farming operation from breeding stock to feeder pigs. Peoples Savings Bank has a security interest in Debtors' livestock. Debtors did not seek approval of the sale of the breeding stock or the purchase of the feeder pigs from the Bank or from the Court. Mr. Fiegen stated at the hearing that he advised Debtors such approval was not necessary. The rationale given is that the Bank's collateral did not decrease, but rather more than doubled. In hindsight, Mr. Fiegen opined this was probably not good advice.

The Bank learned of the change in Debtors' farming operations and the substitution of its collateral after the fact. It declared Debtors in default of their confirmed plan and filed a Motion for Relief from Stay based on Debtors' sale of its collateral and the change in their farm operation. Eventually, at the hearing on the Motion for Relief from Stay, Debtors and the Bank were able to reach an agreement which resulted in modification of Debtors' Plan.

All plan payments are now complete and Trustee has filed a Final Report. Unsecured creditors holding claims totaling $136,355 received a total of $21,000, or approximately 6.5% of their claims.

On page 3, paragraph 9 of the Application for compensation, the Law Firm summarizes the types of services performed during the period covered by the Applica-

tion. These services all relate to matters concerning Peoples Savings Bank, except for number (10) which mentions Ag Services documents. At the hearing, Mr. Fiegen set out additional descriptions for the services rendered which did not relate to the dispute with the Bank, including incurring secured debt to replace a pickup, matters incidental to an auto accident case, receiving approval to seal grain and incurring secured debt to finance Debtors' crop. He stated that negotiations with the Bank and preparation for the stay hearing in regard to Debtors' change from breeding stock to feeder pigs resulted in approximately $3,000 of the fees requested in this Application.

There is no dispute that the relationship between Debtors and the Bank was quite strained. Further, Mr. Fiegen acknowledged that Debtors are fairly "high maintenance" as clients and initiated numerous contacts with the Law Firm, sometimes on almost a daily basis. For example, the Law Firm assisted Debtors in receiving permission from Trustee to take spending money on their vacation and intervened on Debtors' behalf when U.S. Cellular sought to cancel their cell phone contract. Mr. Fiegen stated that his law firm never turns down a client's phone call. Debtor Bruce Nilges filed an affidavit stating that Debtors are happy with the Law Firm's work and have no objection to the legal fees.

## CONCLUSIONS OF LAW

■ The bankruptcy court has broad power and discretion to award or deny attorney fees and a duty to examine them for reasonableness. *In re Clark,* 223 F.3d 859, 863 (8th Cir.2000). The burden is on the attorney to prove that the proposed compensation is reasonable. *Id.* A court may award debtor's attorney compensation only for actual and necessary services. *In*

*re Kohl,* 95 F.3d 713, 714 (8th Cir.1996). Section 330(a)(4)(B) provides that in a chapter 12 or chapter 13 case in which the debtor is an individual, the court may award reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in § 330(a). *See In re Digman,* No. 98–00220–C, slip op. at 2 (Bankr. N.D.Iowa Aug. 17, 1998).

■ Section 330 governs allowance of attorney fees and permits the court, on its own motion or on the motion of a party in interest, to award compensation that is less than the amount requested. *In re Peterson,* 251 B.R. 359, 363 (8th Cir. BAP 2000).

■ We have consistently held that the lodestar method, calculated by multiplying the reasonable hourly rate by the reasonable number of hours required to represent the debtor in the case, is the appropriate approach for determining reasonable compensation under § 330. To determine the reasonable rates and hours, § 330(a)(3)(A) directs courts to consider factors including:

—the time spent;

—the rates charged;

—the necessity of the services for administration of the case;

—the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue or task addressed; and

—the reasonableness of the requested compensation compared to the customary compensation charged by comparably skilled practitioners in non-bankruptcy cases.

*Id.* at 363–64 (citations omitted); *see also In re Apex Oil Co.,* 960 F.2d 728, 732 (8th

Cir.1992) (adopting lodestar approach). In making this determination, the court must take into consideration whether the professional exercised reasonable billing judgment. *In re Mednet*, 251 B.R. 103, 108 (9th Cir. BAP 2000). Time spent "handholding" or reassuring debtors, or on matters which do not require attorney services, are simply not compensable at an attorney's regular hourly rates. *In re Stromberg*, 161 B.R. 510, 519 (Bankr. D.Colo.1993).

■ Counsel has a duty to supervise clients' conduct for compliance with the Bankruptcy Code. *In re Kloubec*, 251 B.R. 861, 866 (Bankr.N.D.Iowa 2000). As a professional, an attorney must instruct the debtor on appropriate conduct and must develop client control. *In re Berg*, 268 B.R. 250, 262 (Bankr.D.Mont.2001). "To foster such client control, an attorney must be: ... knowledgeable about the parameters and limits of available alternatives and remedies, and unwilling to allow a client to direct or dictate the progress or activity in a case, if such activity is inconsistent with the requirements of the law." *Id.*

■ The Law Firm points out that any fees approved will be paid by Debtors directly, not from the bankruptcy estate. It is important to note that only the amount allowed by the court is collectible by the Law Firm. *In re Gantz*, 209 B.R. 999, 1002 (10th Cir. BAP 1997). Attorney fees may be paid to a debtor's counsel only if approved by the Court. *In re Wyant*, 217 B.R. 585, 588 (Bankr.D.Neb.1998). Fees are (1) disallowed, (2) allowed as an administrative expense to be paid from the estate, or (3) allowed but must be paid by the debtor directly, not from the estate. *Gantz*, 209 B.R. at 1003. Absent court approval, neither the debtor nor the estate is ever liable. *Id.*

## CONCLUSIONS

The Court has thoroughly reviewed the Law Firm's present application for fees. The Law Firm has already received more compensation than unsecured creditors have in this case. Unsecured creditors have received 6.5% of their total claims, or $21,000. Fiegen Law Firm has received all of the fees and expenses for which it has previously applied, or $21,043.27. This background is relevant in the Court's decision regarding the Law Firm's current application for compensation.

■ At the hearing, the Court discussed several categories of services rendered by the Fiegen Law Firm which are problematic in this case. The most significant are services arising from Debtors' failure to receive approval of the Bank or the Court prior to selling breeding stock, purchasing feeder pigs and changing their farm operations. By changing their farm operations from breeding to raising feeder pigs, Debtors' income changed to a different format which is not in line with that contemplated in their confirmed plan.

■ Creditors are entitled to notice and a hearing prior to a debtor's use, sale or lease of estate property other than in the ordinary course of business. *In re Continental Holdings, Inc.*, 170 B.R. 919, 929 (Bankr.N.D.Ohio 1994); 11 U.S.C. § 363; Fed. R. Bankr.P. 6004. The sale of a bankruptcy estate's property is clearly subject to court approval under the express terms of the Bankruptcy Code. *In re Payless Cashways, Inc.*, 281 B.R. 648, 653 (8th Cir. BAP 2002); 11 U.S.C. § 363(b). Notice and hearing are also required before a debtor can contract post-petition debts. *In re Knudson*, 943 F.2d 877, 878 (8th Cir.1991); 11 U.S.C. § 364; Fed. R. Bankr.P. 4001(c). Section 364(b) requires notice to interested parties and prior court approval for loans which are not in the ordinary course of business. *See In re*

*Blessing Indus., Inc.,* 263 B.R. 268, 273 (Bankr.N.D.Iowa 2001). Sections 363 and 364 both require notice and hearing as well as court approval, although use of cash collateral is authorized without notice and hearing if the creditors which have an interest in such cash collateral consent. *In re Trout,* 123 B.R. 333, 337 (Bankr. D.N.D.1990).

Debtors gave notice and sought Court approval for other instances of replacing collateral or incurring secured debt. In January and February 2002, Debtors received court approval to replace old pickups with a new model and incur $8,000 of secured debt and to incur $65,000 of secured debt to finance their 2002 crop. Knowing notice, a hearing and court approval were required to sell property and to purchase property with new secured debt, Debtors, on advice of counsel, proceeded with the change from breeding to feeding in mid–2002 without giving notice or seeking court approval as required by the Bankruptcy Code and Rules.

The Law Firm acknowledged that at least $3,000 of the fees requested arose from Debtors' change from breeding stock to feeder pigs. This represents time spent responding to the Bank's Motion for relief from stay, negotiations with the Bank and preparation for the stay hearing. Upon a detailed review, the Court finds that more of the services the Law Firm rendered were dedicated to this issue, or up to $5,000 of the fees requested. Assistant U.S. Trustee Reasoner stated that almost all of the fees requested arose from the Law Firm's failure to contact the Bank prior to advising Debtors to institute the change of their operations from breeding to feeding.

Upon full review of the law and the fee application, the Court concludes that $4,000 of the fees requested are not allowable under § 330. Such services would not have been necessary if counsel had advised and aided Debtors in getting pre-approval for their sale and purchase of livestock and change in farm operations. The Law Firm argues that whether done before or after the fact, the fees would have accrued in light of the difficult relations between Debtors and the Bank. The Court is not convinced this is so. The Bank's position on the matter is reasonable. The Law Firm was not justified in advising Debtors to proceed without approval from the Court or the secured creditor, thereby liquidating secured property and incurring secured debt from a new lender who was not previously listed as a creditor. The Law Firm has failed to prove the compensation requested is reasonable. The Court disallows $4,000 of the fees requested, and a proportionate amount of the expenses requested.

█ Other areas of concern to the Court include fees incurred on request of the Debtors which do not require attorney services. It is obvious the Law Firm failed to assert proper billing control over their clients. This led to the Law Firm rendering unnecessary services at the whim of their clients. The Court has extensively reviewed the fee application. Rather than set out specific instances of unnecessary services, the Court concludes that at least one-fourth of the remaining services performed, as previously set out in this opinion, were unnecessary and thus reduces the amount of fees and expenses allowed by that percentage.

Based on the foregoing, the Fiegen Law Firm is allowed fees of $2,260 and expenses of $225, or a total of $2,485. This amount is payable by Debtors. The remaining fees requested are disallowed and not payable by Debtors or the bankruptcy estate.

**WHEREFORE,** the Fourth Post–Confirmation Application for Court Approval of Compensation of Attorneys' Fees and Expenses by Fiegen Law Firm is GRANTED IN PART and DENIED IN PART.

**FURTHER,** compensation for fees and expenses is allowed in the total amount of $2,485.

**FURTHER,** the remaining compensation requested by the Law Firm is disallowed.