**In re AMERITEX YARN, LLC, Debtor.**
**No. B–07–10425C–11G.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

Oct. 5, 2007.

C. Edwin Allman, III, Winston-Salem, NC, R. Bradford Leggett, Winston-Salem, NC, for Debtor.

**ORDER APPROVING IN PART AND DENYING IN PART THE INITIAL APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF COUNSEL FOR THE COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD OF APRIL 13, 2007 THROUGH MAY 31, 2007**

CATHARINE R. CARRUTHERS, Bankruptcy Judge.

THIS MATTER came on for hearing after due and proper notice before the

undersigned Bankruptcy Judge on the Initial Application for Interim Compensation and Reimbursement of Expenses of Counsel for the Committee of Unsecured Creditors for the period April 13, 2007 through May 31, 2007 and for Establishment of Procedure for Submission of Subsequent Applications for Compensation and Reimbursement of Expenses. W.B. Hawfield, Jr. and Jeremy Dunn appeared on behalf of the Applicants. C. Edwin Allman, III, appeared on behalf of Debtor and Robyn Whitman appeared on behalf of the Bankruptcy Administrator. Both the Debtor and the Bankruptcy Administrator filed objections to the Initial Application.

The Court, after reviewing the Application and the Objections thereto, and hearing the evidence presented and the arguments of counsel, makes the following Findings of Fact pursuant to Rule 52 of the Rules of Bankruptcy Procedure.

### JURISDICTION

■ The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151,157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) which this court may hear and determine.

### FINDINGS OF FACT

On or about March 23, 2007, an involuntary Chapter 7 petition was filed against the Debtor. The Debtor consented to the entry of an order for relief and converted the case to a Chapter 11 proceeding on April 17, 2007.

The Debtor is a privately owned Delaware limited liability company that previously operated two yarn spinning plants located respectively in Burlington, North Carolina and Spartanburg, South Carolina. The Debtor was formerly engaged in the manufacture and sale of cotton and synthetic yarn. This case is the second bankruptcy filing for the Debtor. The Debtor filed its first Chapter 11 petition on January 17, 2002, and a plan was confirmed on February 7, 2003. During 2006, the Debtor discontinued its operations and began the process of liquidating its assets. The Debtor sold the majority of its equipment prior to the filing of the Chapter 7 proceeding and is presently in possession of its real property and is marketing the remainder of its personal property and the real property. According to the Debtor's schedules, the real property has a value of approximately $5.2 million and the personal property is valued at $3.1 million. The Debtor reported the following liabilities: secured debt of approximately $580,000.00, priority debt of $335,000.00, and unsecured debt of $5.1 million.

On May 2, 2007, the court entered an order appointing a Committee of Unsecured Creditors (the "Committee"). At its first meeting on May 8, 2007, the Committee formally selected Moore & Van Allen as its counsel. The Committee filed an Application for an Order Authorizing the Employment and Retention of Moore & Van Allen PLLC as Counsel for the Committee of Unsecured Creditors on May 22, 2007. The Committee requested that the court authorize the retention of counsel *nunc pro tunc* to May 2, 2007. On May 23, 2007, this Court entered an Order authorizing the Committee to employ Moore & Van Allen *nunc pro tunc* to May 2, 2007.

Prior to being employed as counsel for the Committee, Moore & Van Allen provided pre-petition services to a creditor of

the Debtor, Saurer, Inc. ("Saurer").[1] These services included analyzing whether it was appropriate to file an involuntary petition against the Debtor. According to Mr. Hawfield's affidavit of May 22, 2007, Moore & Van Allen has not been paid for pre-petition services related to the filing of the petition and does not have a claim against the Debtor for these services. The firm also advised Saurer, Inc. on the completion of its proof of claim. Mr. Hawfield's affidavit went on to state:

> Assuming no objection, MVA anticipates providing assistance to Saurer, Inc., as a petitioning creditor, in preparation of its claim to recover costs and fees associated with filing the involuntary petition herein which consists of services rendered and costs advanced by MVA. By agreement, the amount of such pre-petition fees is capped at $3,000.00 plus expenses. As of this date [May 22, 2007], no such fees or expenses have been paid or invoiced. MVA expended additional time in representing Saurer with regard to the administration of the case after conversion but prior to the formation of the Committee. These charges have not been billed to any party but may be compensable by the Debtor.

The principal attorneys designated to represent the Committee and their hourly rates are:

| W.B. Hawfield | $485.00 per hour |
| Edward Embree | $320.00 per hour |
| Hillary Crabtree | $310.00 per hour |
| Jeremy Dunn | $240.00 per hour |

In addition, Moore & Van Allen charges $125.00/hour to $150.00/hour for para-professionals. The hourly rates set forth above are Moore & Van Allen's standard hourly rates for work of this nature.

Moore & Van Allen filed its application for fees and expenses for the period beginning April 13, 2007 and ending May 31, 2007 showing an itemization of hours worked and fees totaling $41,873.85 as well as expenses in the amount of $277.85. Notwithstanding, Moore & Van Allen only seeks fees in the amount of $33,595.50 and expenses incurred in the amount of $277.85, for a total balance due of $33,873.35.

Approximately $6,895.00 in time charges were incurred from April 13, 2007 to May 1, 2007 which was prior to the *nunc pro tunc* appointment of Moore & Van Allen. During this prior period, Moore & Van Allen was representing Saurer, Inc., a petitioning creditor. Moore & Van Allen submits that such expenses are properly compensable by the estate under the authority of 11 U.S.C. § 503(b)(4).

Moore & Van Allen submitted five invoices as follows:

| | May 2 Charges | Voluntary reduction | Amount Requested |
|---|---|---|---|
| Invoice No. 442612 | $4,128.00 | $ 0.00 | $21,105.55 |
| Invoice No. 442695 | $2,191.00 | $5,000.00 | $ 6,302.50 |
| Invoice No. 442616 | $ 576.00 | $ 0.00 | $ 1,870.80 |
| Invoice No. 442614 | $ 0.00 | $3,000.00 | $ 2,931.50 |
| Invoice No. 442613 | $ 0.00 | $ 0.00 | $ 1,663.50 |

The court will detail those entries on the fee application that give rise to concern.

### A. *Invoice No. 442612(1) Case Administration*

This invoice details $4,128.00 in charges incurred from April 13, 2007 through May 2, 2007 prior to the *nunc pro tunc* appointment of the committee. Entries include the following:

---

1. On the involuntary petition, this creditor is identified as "Sauer, Inc."; however on subsequent pleadings, this creditor is referred to as "Saurer, Inc."

| 4/13 | 4.00 hours | Legal research of local rules and regarding creditors' committee and correspondence regarding same. | $ 960.00 |
|---|---|---|---|
| 4/17 | 3.00 hours | Review of Schedules and other court documents (2); telephone conversation with Bob Sage regarding motions and correspondence regarding the same (.5); telephone conversation with Eddie Allman's office regarding hearing on motions (.5). | $ 720.00 |
| 4/18 | 4.20 hours | Preparation of Objection to Motion to Sell (2.8); Review various motions (.3); Telephone conversation with Bob Sage regarding status of the case and up coming hearing (.2); Preparation for hearing (.7); Telephone conversation with Bill Porter regarding motion for relief (.2). | $1,080.00 |
| 4/18 | 1.00 hours | File and serve limited objection | $ 145.00 |

The court notes that the objection to the Motion to Sell that is referenced in the billing entry for April 17, 2007 was docketed as being filed by Moore & Van Allen on behalf of petitioning creditor Saurer.

### B. Invoice No. 442695(2) Intra–Office Conferences/Multi–Person Activities

This invoice includes $2,190.00 for services performed between April 13, 2007 and May 2, 2007 including charges for:

| 4/19 | 4.60 hours | 2.3 hours each for Ed Embree and Jeremy Dunn to attend a hearing on DIP financing and payroll motions and post hearing conference with Bankruptcy Administrator regarding committee formation | $1,288.00 |
|---|---|---|---|
| 4/19 | 0.30 hours | results of hearing | $ 145.00 |

The court records reflect that both Ed Embree and Jeremy Dunn were present at the hearing and both noted appearances on the record on behalf of Saurer, Inc.

This invoice also includes post-May 2, 2007 entries including:

| 5/11 | 7.2 hours (3.60 each) for two attorneys attending creditors committee conference | $2,600.00 |
|---|---|---|
| 5/14 | 6.2 hours (3.10 each) for two attorneys on conference call with debtor | $2,247.50 |
| 5/5–5/30 | Interoffice conferences | $4,354.50 * |

* Moore and Van Allen proposes to take a voluntary reduction in fees of $5,000.00 from this invoice

### C. Invoice No. 44616(3) Travel

The only entry this invoice includes for time prior to May 2, 2007 is travel time for Mr. Dunn who noted at the hearing that he was appearing on behalf of Saurer, Inc.

| 4/19 | 4.80 hours | Travel to and from Durham for DIP hearing | $ 576.00 |
|---|---|---|---|

### D. Invoice No. 442614(4) Fee Applications

There is no time prior to May 2, 2007 on this invoice. All entries on this invoice deal with the procedures, guidelines, and legal research regarding the retention of the Committee's counsel and time expended to review conflicts to see if representation of the Committee was possible. The time reported for review of conflict search is $1,212.50 and the time reported for preparation of the application to employ counsel for the Committee, the affidavit of counsel and the proposed order employing counsel is $4,719.00; however, Moore & Van Allen has agreed to take a voluntary reduction of $3,000.00 on this invoice.

### E. Invoice No. 442613(5) Other Contested Matters

This invoice contains no time entries prior to May 2, 2007 and primarily deals with drafting a limited objection to the sale of equipment. The total sum sought under this invoice is $1,663.50.

The Bankruptcy Administrator filed an objection as to the hourly rates requested by Moore & Van Allen. No objection was filed on behalf of the Bankruptcy Administrator as to services performed prior to

May 2, 2007. The Bankruptcy Administrator requested that after taking into account the voluntary reduction in fees of $8,000.00, the amount awarded be further reduced by $3,151.00 and the hourly rates going forward be reduced as follows:

| | | |
|---|---|---|
| W B Hawfield | $485.00 | $330.00 |
| Ed Embree | $320.00 | $320.00 |
| Jeremy Dunn | $240.00 | $190.00 |
| Paralegal 1 | $165.00 | $ 80.00 |
| Paralegal 2 | $145.00 | $ 80.00 |

The Debtor filed an objection to the initial fee application setting out the following: (1) objection to services rendered prior to the *nunc pro tunc* appointment effective May 2, 2007 with a request that those fees ($6,895.00) should be disallowed without prejudice to file a separate application as they deem appropriate for representing a petitioning creditor, (2) objection to the time expended by the applicants in conducting a conflicts check, (3) objection as to excessive charges associated with the application, declaration and order of employment, (4) objection as to duplication of services, and (5) objection as to excessive rates.

Counsel for the Committee argued that the policy of the Middle District to apply local rates should not apply in this case, that within the Middle District this case should be considered "a large complicated case," and that the "fees should be set by the market rather than by arbitrary scales set by the judge." Counsel argued that policies of this court are seen as "attacks" on attorneys and "instead of facilitating the flow of cases from venue to venue in a national system, the current policy we have isolates the Middle District from that mainstream."

## DISCUSSION

### A. Pre–May 2, 2007 Time

■ As a preliminary matter, the court must address Moore & Van Allen's request for fees and expenses incurred prior to its appointment as counsel of the official committee of unsecured creditors. Moore & Van Allen was approved as counsel for the Committee pursuant to an order signed on May 23, 2007. The court provided in the order that Moore & Van Allen could be paid for services rendered on a *nunc pro tunc* basis back to May 2, 2007. Moore & Van Allen is now seeking to be compensated for time expended prior to May 2, 2007 in the amount of $6,895.00. Counsel for the Debtor has objected and stated that it would be more appropriate for the firm to submit a separate fee application for the time expended on behalf of one of the petitioning creditors under the authority of 11 U.S.C. § 503(b)(4).

In the Application for an Order Authorizing the Employment and Retention of Moore & Van Allen as Counsel for the Committee of Unsecured Creditors, the Committee requested that counsel be compensated and reimbursed for expenses pursuant to 11 U.S.C. §§ 330, 331 and 507(a)(2). No request for compensation under § 503(b)(4) was disclosed or requested. The Order provides for compensation under §§ 330, 331 and 507(a)(2). Counsel for the Committee contends that if the court does not approve the pre-May 2, 2007 time under this application that it will "indicate a policy that I think is detrimental to the administration of involuntary cases." Counsel for the Committee is now seeking compensation under § 503(b)(4) despite the fact that the Order for appointment does not provide for compensation under this section. Additionally, § 503(b)(4) provides for compensation for professional serviced rendered by attorney for an entity whose expenses are allowable under § 503(b)(3). *See In re Decarbo*, 152 B.R. 44, 45 (W.D.Pa.1993).

Section 503(b)(3) provides that after notice and hearing the court can award an

allowed administrative expense for the actual, necessary expenses, *other than* compensation and reimbursement specified in § 503(b)(4) incurred by a creditor that files an involuntary petition. Thus, expenses excluded from § 503(b)(3) are expenses for professional services rendered by an attorney or an accountant for the petitioning creditor. Section 503(b)(4) provides for

> reasonable compensation for professional services rendered by an attorney or an accountant *of an entity whose expense is allowable* under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant

11 U.S.C. § 503(b)(4) (emphasis added). Therefore, the first step in a case such as the one presently before the court, is an application or motion by the petitioning creditor under § 503(b)(3)(A). Then, if the court determines that the creditor is entitled to actual and necessary expenses and an administrative claim, step two is an application or motion under § 503(b)(4) for reasonable compensation for professional services rendered by the attorney [or accountant] for the entity whose expense is allowable under § 503(b)(3).

█ As stated by Collier an "administrative expense priority is available under § 503(b)(4) *only to* (emphasis added) an entity whose expenses are allowable under § 503(b)(3)." 4 *Collier on Bankruptcy,* ¶ 503.11(2) (Matthew Bender 15th ed. rev.). An entity cannot seek reimbursement of professional fees under § 503(b)(4) unless it previously qualified or concurrently qualifies for reimbursement of expenses under § 503(b)(3). *In re Decarbo,* 152 B.R. at 45. No motion for a request of an

allowable administrative fee has been made under 11 U.S.C. § 503(b)(3) and therefore no application for reimbursement may be sought under 11 U.S.C. § 503(b)(4).

█ Even if Moore & Van Allen were permitted to request the fees through the pending application, despite the fact that no § 503(b)(3) application had been filed, the court still could not award all the fees requested. The entry of the order for relief is the "cutoff point" to assert an administrative claim based on the commencement of an involuntary case. In the case herein, the Debtor consented to convert the case from an involuntary Chapter 7 to a voluntary Chapter 11 on April 16, 2007 and the order for relief was entered on that date. A petitioning creditor cannot use § 503(b)(3) and therefore § 503(b)(4) as a basis for an administrative claim for expenses incurred after the order for relief. *In re Hall,* 373 B.R. 788, 794–96 (Bankr.S.D.Ga.2006); *In re Amanat,* 340 B.R. 713, 717 (Bankr.S.D.N.Y.2006); *In re Indian Motorcycle Apparel and Accessories Co.,* 174 B.R. 659, 662–63 (Bankr. D.Mass.1994). Collier agrees, stating that "entry of the order for relief acts as a cutoff point for assertion of an administrative claim based on commencement of an involuntary case." 4 *Collier on Bankruptcy,* at ¶ 503.10(2)(b). *See also In re Schneider,* 2007 WL 2688812, at *3 (Bankr.N.D.Cal. Sept.17, 2007); *In re Amanat,* 340 B.R. at 717; *In re Crazy Eddie, Inc.,* 120 B.R. 273, 278 (Bankr.S.D.N.Y.1990). *But see In re On Tour, LLC,* 276 B.R. 407, 414 (Bankr. D.Md.2002).

Based on the foregoing, the Application by Moore & Van Allen for fees and expenses incurred prior to May 2, 2007 in the amount of $6,895.00 is DENIED, without prejudice to have the matter reconsidered in the proper procedural and legal context.

## B. Post–May 2, 2007 Time

Traditionally, the bankruptcy process allows a debtor a fresh start while preserving the estate in order to maximize the creditors' recovery. *See* Margaret Howard, *Bankruptcy: Cases and Materials* 4 (Thomson West 4th ed.2005). Attorneys and other professionals are utilized to help facilitate the bankruptcy process. Those professionals earn fees, but the issue becomes whether a sought after fee amount is reasonable.

In the 1898 Bankruptcy Act, Rule 219 stated that compensation was to be reasonable with consideration given to the "nature, extent and value of the services rendered as well as the conservation of the estate and the interest of creditors." Brittany E. Powell, Comment, *Eliminating Fee Enhancements: Encouraging Quality Representation in Bankruptcy While Maximizing the Value to the Estate,* 20 Bankr.Dev. J. 207, 209 (2003). The language "conservation of the estate" caused courts to limit the amount that an attorney could recover to ensure the resources of the estate were protected and intact for distribution to the creditors. *Id.* at 209–10. When Section 330 was added during the Bankruptcy Reform Act of 1978, the words "conservation of the estate" were eliminated. *Id.* at 211. Generally the policy of Section 330, when it was enacted, was to compensate attorneys and other professionals serving in bankruptcy cases at the same rate as other professionals or attorneys in a non-bankruptcy case. *See id.* at 212. Congress wanted to ensure that competent lawyers practiced in the area of bankruptcy, without feeling "slighted." Hence, judges were left to balance two competing notions: (1) ensuring that creditors receive their maximum recovery, and (2) ensuring that attorneys and other professionals are paid reasonable compensation for their services.

Reasonableness is a "classic amorphous standard that is preclusive of bright line rules." Steven E. Seward, Casenote, *A World of Evergreen Fees? In re Pan American Hospital and Evergreen Retainers in Chapter 11 Reorganizations,* 60 U. Miami L.Rev. 399, 403 (2006). The determination of what is reasonable compensation is within the sound discretion of the bankruptcy court. *In re Bernard Hill, Inc.,* 133 B.R. 61, 69 (Bankr.D.Md.1991). *See also In re Bryant,* 346 B.R. 406, 410 (Bankr.E.D.Va.2006); *In re Southeast Banking Corp.,* 314 B.R. 250, 270 (Bankr. S.D.Fla.2004); *In re Nilges,* 301 B.R. 321, 324 (Bankr.N.D.Iowa 2003). Moreover, the fee applicant has the burden of proof in asserting that the fees requested are reasonable. Charles S. Riecke, *Board Certification and BAPCPA: The Bottom Line,* Am Bankr.Inst. J., Feb. 2007, at 65. *See also In re Breeden,* 180 B.R. 802, 808 (Bankr.N.D.W.Va.1995).

In determining the amount of reasonable compensation, the court is directed to consider the nature, the extent, and value of such services, taking into account all relevant factors including the six factors set out in 11 U.S.C. § 330(a)(3):

**(A)** the time spent on such services;

**(B)** the rates charged for such services;

**(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

**(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

**(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill

and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

■ While BAPCPA may have added additional criteria for the court to review in what constitutes a reasonable fee, the twelve factors originally articulated in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), apply to determine the lodestar amount. They are as follows: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity cost in pressing the instant litigation'; (5)the customary fee for like work; (6) the attorney's expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir.1985) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d at 226 n. 28 and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir.1974)). This court does not agree with Moore & Van Allen that the *Harman* case and its twelve factors are now superseded.[2] So, the starting point in any fee award is the "lodestar" or the product of reasonable billing rates multiplied by a reasonable estimation of hours expended. Therefore, the court has to determine the number of hours reasonably expended by Moore & Van Allen and multiply that figure by the hourly rate that the court determines to be reasonable in this case.

### 1. The § 330(a)(3) Factors

In determining what fees should be awarded, the court must first examine the fee application in light of the six factors set out in § 330(a)(3).

(1) Was the time spent on such services reasonable? Moore & Van Allen concedes that it took them an extraordinary amount of time to learn the procedures in the

---

2. Despite counsel for the unsecured creditors' committee's claims that *Harman v. Levin* is widely believed by commentators to have been superseded, it is still cited in the Fourth Circuit with regularity, and has been after the enactment of BAPCPA in 2005. *See, e.g., In re Bowe*, 365 B.R. 585 (Bankr.D.Md.2007); *In re Simmons*, 2007 Bankr.LEXIS 1101 (Bankr. D.S.C. Mar. 2, 2007); *Boleman Law Firm, P.C. v. United States*, 355 B.R. 548 (E.D.Va. 2006); *In re Harvey*, 2006 WL 4481990, 2006 Bankr.LEXIS 4025 (Bankr.D.Md. Nov. 22, 2006); *In re Kora & Williams Corp.*, 2006 WL 4482004, 2006 Bankr.LEXIS 4207 (Bankr. D.Md. Oct. 28, 2006); *In re Gates*, 2005 Bankr.LEXIS 2034 (Bankr.E.D.Va. May 10, 2005); *In re Keatts*, 2005 WL 5099033, 2005 Bankr.LEXIS 2917 (Bankr.E.D.Va. Mar. 31, 2005). Attorney for the creditors' committee did not provide any references to materials indicating that *Harman v. Levin* has been superseded.

Even if this court were convinced that *Harman v. Levin* were superseded by § 330(a)(3), it would not change the court's analysis. The factors set forth in the statute are substantially similar to the twelve (12) *Johnson* factors. The factors in § 330 are drawn more broadly than the factors in *Johnson*, allowing each of the *Johnson* factors to fit within the broad categories set forth in the Code. It seems more appropriate, therefore, to argue that *Harman* has been codified by § 330 rather than superseded. However, whether *Harman* has been superseded or codified ultimately has no bearing on the fee application before the court.

Middle District and basis procedures in the representation of an unsecured creditors committee. Moore & Van Allen has voluntarily agreed to reduce the fees requested in this application by $8,000.00. Of that amount, $2,191.00 is time incurred prior to May 2, 2007 which the court has previously addressed. Therefore the court will find that a reduction is appropriate with the amount to be based on lodestar.

■ (2) Are the rates requested reasonable? There is nothing extraordinary about this case that requires rates beyond those typically awarded to the top members of the bar in this district. Mr. Allman and Mr. Leggett, as counsel for the debtor are being paid their usual and customary rate for work performed.[3] The court has not lowered their rates and is paying them what they charge in the market. This is a liquidating Chapter 11 case. The secured creditor has been paid in full from the sale of assets, and there is no business to reorganize or debts to restructure. Mr. Hawfield, while a distinguished member of the bankruptcy bar, admits that he typically represents groups of secured creditors, rather than unsecured creditors and that he has limited experience in representing committees in a Chapter 11. There is no special expertise that he or his associate bring to this case to justify the rates they are requesting. Therefore, counsel is entitled to compensation at the rates customarily charged for similar services in the Middle District. *In re LearningSmith, Inc.,* 247 B.R. 581, 582 (Bankr.D.Mass.2000) (stating that the court should apply the rate customarily charged for similar services in the locality and should depart from the local rate only where the case required expertise not locally available). *Accord Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558, 560 (1st Cir.1986); *In re Narragansett Clothing*

*Co.,* 210 B.R. 493, 498 (1st Cir. BAP 1997). The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1313 (8th Cir.1981). *See also In re Williams,* 2007 WL 1875992, at *4 (Bankr.N.D.Ohio June 27, 2007) (stating that a presumptive or "normal and customary" fee can be used as a guidepost in determining the lodestar, so long as the presumptive fee incorporates an assessment of the number of hours required and the rate that would be charged by a local bankruptcy practitioner in an ordinary case); *In re Iwasa,* 361 B.R. 162, 167 (Bankr.D.Idaho 2007) (showing that a court found the proposed rate for compensation reasonable, considering the nature and complexity of the case, as well as the rates generally charged by attorneys locally); *In re Atwell,* 148 B.R. 483, 489 (Bankr.W.D.Ky.1993) (stating that a major factor in determining what is a reasonable hourly rate for purposes of Lodestar is whether the rate charged is comparable to rates charged by comparable attorneys in the local area). As stated *In re Palm Beach Cruises,* "the basic litmus test for professional fees is the average rate charged by 'local' professionals for similar work." 208 B.R. 78, 81 (Bankr.S.D.Fla. 1997).

The court does not dispute that Mr. Hawfield and his associate command the rates they are requesting in Charlotte, North Carolina or that they are "cheap" when compared to the rates charged in New York or Delaware. The rate Mr. Hawfield is requesting is 61.66% more per hour than Mr. Allman. Mr. Hawfield brings no special expertise to this case to

---

**3.** Mr. Allman and Mr. Leggett's hourly rates are $300.00 and $325.00 respectively.

justify such a significant difference in the compensation awarded.

(3) Are the services necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title? The work performed after May 2, 2007 was necessary to the administration of the case.

(4) Were the services preformed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed? The court believes that this factor has previously been addressed. There were certain items that took too long (the preparation of the fee application) but the law firm has recognized this and has voluntarily agreed to reduce the compensation it receives.

(5) Are the attorneys board certified, or have they otherwise demonstrated skill and experience in the bankruptcy field? Based upon the latest available directory of Legal Specialists, certified by the North Carolina State Bar, neither Mr. Hawfield, Mr. Embree or Mr. Dunn[4] are certified as specialists by the State Bar. Mr. Allman is certified as a specialist in Business Bankruptcy Law. The court will find however, that both Mr. Hawfield and Mr. Embree have demonstrated skill and experience in the bankruptcy field to be paid at a comparable level with those certified. Mr. Dunn does not have sufficient experience at this time to be paid at the same rate as those who have been certified.

(6) Is the compensation reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title? Again the court finds that the customary compensation in cases other than cases under this title should be based on the rates typically charged in the Middle District of North Carolina and the rates requested are excessive.

### 2. The Johnson Factors

The first *Johnson* factor is the time and labor involved in the case. This factor has already been addressed, and counsel for the committee voluntarily agreed to reduce the amount of compensation based on the amount of time it took them to perform certain tasks. The voluntary reductions already taken by Moore & Van Allen are sufficient to address any issues.

The second *Johnson* factor is the novelty and difficulty of the work required in the case. The work of the Committee in this case involved monitoring the activities of the Debtor, reviewing any offers to sell real estate or equipment, reviewing the books and records of the debtor, reviewing the financial documentation of those creditors that contend they have a perfected security interest or leasehold interest, and oversight responsibilities to insure that the Debtor was not spending monies inappropriately. Since reorganization is not an alternative, it will be the role of the committee to work with the Debtor to fashion an acceptable liquidation plan and if necessary to bring preference or insider actions. However, inasmuch as this is a liquidation case, there is no need to perform an analysis of going forward projections or business models to determine if the disclosure statement is accurate or if the plan proposed is feasible. Therefore, issues relating to projections, confirmation and consummation are limited.

The third *Johnson* factor requires consideration of the skill required to properly perform the legal services. The Court is aware of nothing exceptional about this

---

4. In order to be certified as a specialist you must have been in practice for at least 5 years and Mr. Dunn does not meet this threshold requirement.

case that would require any special expertise. The court was involved in the first Chapter 11 case and entered the Order confirming the first plan. The business was not able to continue to operate and this case is simply an orderly liquidation of the assets.

The fourth *Johnson* factor deals with preclusion of other employment by the attorney due to accepting representation of committee. The court finds that the counsel would be working on other matters if it were not involved in this case and concedes that counsel would probably be paid at the rates requested.

The fifth *Johnson* factor is the most important one for the court to examine as it is the one most in dispute. That factor requires consideration of the "customary fee" for the type of services performed by the attorney. This is not a national or complex case. Counsel brings no special expertise to this case. In essence, this case consists of selling two parcels of real estate and their contents and reviewing the records to see if there are preferential or fraudulent transfers.[5]

As stated by Judge Stocks in *In re Brendle's Inc.,* Case No. 96–50495, slip op. (Stocks, J. Feb. 20, 1998), in the Fourth Circuit the relevant market for determining the prevailing market rate ordinarily is the community in which the court making the determination sits. *See also Depaoli v. Vacation Sales Assoc.,* 489 F.3d 615, 622 (4th Cir.2007) (stating that attorney needs specific evidence of the "prevailing market rates in the relevant community" for the type of work); *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (finding that the requirement that rates be reasonable may be met by compensating attorney at the prevailing market rate in the relevant community); *National Wildlife Fed'n v. Hanson,* 859 F.2d 313, 319 (4th Cir.1988) ("The community in which the court sits is the appropriate starting point for selecting the proper rate."). While the court concedes that the wishes of a committee should be considered when seeking counsel, it is not a guarantee that counsel will be paid his or her customary rate if that rate is not warranted and is so out of line with the customary rates where the court sits. In the first Ameritex case, Mr. Allman represented the Debtor, and John Northen represented the Committee. Mr. Northen is a board certified specialist in Business Bankruptcy and has handled national cases on behalf of debtors and creditors' committees. He has a national reputation and is highly respected for the work he performs. His present customary billing rate is $330.00 per hour. While it is a committee's decision who to hire, it is the debtor that is required to make the payments. When highly qualified local counsel is available to represent a committee at local market rates, the court sees no reason to burden the debtor and possibly reduce the dividend to unsecured creditors by bringing in out-of-district counsel and paying rates substantially in excess of local rates. *See In re Waldoff's Inc.,* 132 B.R. 329, 335 (Bankr.S.D.Miss.1991) (stating that a firm may be justified in recovering their own normal rate as opposed to the local rate in the city where the case is pending when circumstances of the case justify bringing in outside counsel).

The sixth *Johnson* factor requires consideration of whether the fee is a fixed or contingent fee. This factor has no bearing in this case.

5. The committee asked to engage an outside company to do a detailed analysis of transfers. The committee was allowed to engage the company to preserve the records but the decision to allow additional services was deferred in as much as all creditors might be paid in full from the liquidation of the assets.

The seventh *Johnson* factor is the time limitation imposed by the client or the circumstances of the case. There were no emergency hearings in this case, no issues with payroll, and no perishable good or security issues so this factor has no bearing in this case.

The eighth *Johnson* factor requires consideration of the amount involved in the case and the results obtained by the attorney. While it is still early in the case and this could change, this is not a factor in this case.

The ninth *Johnson* factor involves the experience, reputation and ability of the attorneys. Without question the attorneys for the Committee are highly skilled professionals who produce exceptional work product and enjoy an outstanding reputation in the bankruptcy bar. However, they bring nothing to the case that could not be provided by equally skilled counsel providing the same services at a much lower cost.

The tenth *Johnson* factor is whether this case should be considered "undesirable." There is nothing before the court to indicate that this is an undesirable case or that the Committee had difficulty obtaining counsel. Consequently, this is not a factor in this case.

The eleventh *Johnson* factor involves the nature and length of the professional relationship with the client. While the firm did have a prior relationship with Saurer, the Committee just came into existence, so this is not a factor in this case.

The last *Johnson* factor requires the court to take into consideration awards in similar cases. This court has awarded fees at the rates requested by Mr. Hawfield in other cases,[6] but such awards have been limited to special counsel for specialized services that could not be performed by counsel from this area. In looking at the awards given in similar cases, the court sees no reason to pay Committee Counsel at the rates requested.

 Based on the foregoing analysis, the court concludes that there is no reason to pay fees so much higher than the prevailing rates in this district and the court finds and concludes that the following hourly rates are reasonable for the attorneys who performed services in this case: $350.00 for Mr. Hawfield; $320.00 for Mr. Embree[7]; $200.00 for Mr. Dunn and $100.00 for paralegals. Additionally the court does not believe that this case warrants the participation of two attorneys at all hearings or on all conference calls. Debtor's counsel has been able to provide competent, professional representation at all hearings by using one attorney. The court believes that with the level of competence of the members of Moore & Van Allen, that they too can manage on the skills of one attorney in court for most hearings. While many cases justify the participation of two attorneys at all times, this is not one of those cases.

This is a repeat Chapter 11 case that is now simply a liquidating Chapter 11 proceeding. This case could easily have converted to a voluntary Chapter 7 in which there would be no right to have a creditors' committee in place. It is not a national case. It is not a case with complex or novel issues. It is not a case where the parties will fight over financial projections

---

6. For instance, in E–Z Serve Convenience Stores, Inc. (Case No. 02–83138), the court awarded various out-of-state special counsel rates substantially higher than local rates to perform services in other areas of the country, and in the case of Buildnet, Inc. (Case No. 01–82293), a software development company, the court authorized fees to out-of-state financial advisors and accountants at higher than local rates.

7. Mr. Embree's rates were reasonable and no adjustment is necessary.

or feasibility or the ability of on going management. Nothing in this case warrants the Debtor having to pay the rates requested or for the duplication of services that have been requested. The court will award time spent for conducting conflict checks and will make no further reduction for the duplication of services as counsel for the committee has already agreed to do so.[8]

With the rates set, the court must go back and make an adjustment to the fees that counsel voluntarily agreed to reduce. The court has attempted to do that in the most favorable manner possible.

First, in Invoice No. 442612, excluding charges for services prior to May 2, 2007, Moore & Van Allen requested fees in the amount of $15,639.00. Based upon the new rates as set forth above, the total allowable charges are $12,855.00.

On Invoice No. 442613 Moore & Van Allen requested fees in the amount of $1,663.50. Based upon the new rates as set forth above, the total allowable charges are $1,305.00.

Next, in Invoice No. 442614, Moore & Van Allen requested fees in the amount of $2,931.50 after a discount of $3,000.00 or 50.6%. At the allowed rates, the charges on this invoice total $4,455.00. After applying the 50.6% discount, the amount allowed for Invoice No. 442614 is $2,200.77.

On Invoice No. 442616, Moore & Van Allen requested fees in the amount of $1,207.50, excluding charges for services prior to May 2, 2007. Based upon the new rates as set forth above, the total allowable charges are $925.00.

Lastly, on Invoice No. 442695 Moore & Van Allen requested fees in the amount of $11,302.50 and applied a discount in the amount of $5,000.00 or 44%. Of the total charges, $9,112.50 are for services provided subsequent to May 2, 2007, which with the 44% discount would have been $5,103.50. At the allowed rates, the charges on this invoice total $6,785.00. After applying the 44% discount, the amount allowed is $3,799.60.

These figures are summarized below:

| | Requested Post–May 2 Charges | Allowable Post–May 2 Charges |
|---|---|---|
| Invoice No. 442612 | $15,639.00 | $12,855.00 |
| Invoice No. 442613 | $ 1,663.50 | $ 1,305.00 |
| Invoice No. 442614 | $ 2,931.50 | $ 2,200.77 |
| Invoice No. 442616 | $ 1,207.50 | $ 925.00 [9] |
| Invoice No. 442695 | $ 5,103.00 [10] | $ 3,799.60 |
| TOTAL | $26,544.50 | $21,083.37 |

Based on the foregoing, Moore & Van Allen is awarded compensation in the amount of $21,083.37 and expenses in the amount of $277.85.

---

**8.** The reduction will be adjusted to reflect an lower hourly rate such that the voluntary reduction will be adjusted downward to match the hourly rate approved.

**9.** Mileage charges are not included in this figure, but are allowed as requested.

**10.** This figure was calculated using the 44% discount that Moore & Van Allen proposed.